IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

|  |  |  |
|---|---|---|
| MILL STREET CLINIC PHARMACY, INC., individually and on behalf of all others similarly situated, | ) ) ) ) | **FILED** |
|  | ) | DEC **2 6** 2007 |
| Plaintiff, | ) | |
| v. | ) ) | MICHAEL W. DOBBINS CLERK, U.S. DISTRICT COURT |
| CAREMARK RX, LLC, dba CAREMARK RX, INC., and CAREMARK, INC., | ) ) ) | |
| "A," being the correct legal name of Defendants, known only to the Plaintiff as set out above; "B," whether singular or plural, being the person, corporation, firm, association, or other entity who made intentional and/or reckless misrepresentations and/or suppressed and/or concealed the truth and/or who negligently or wantonly hired, trained, and/or supervised the agents, employees or persons causing damage to Plaintiff; and "C," whether singular or plural, being that person, firm, association, corporation, and/or other entity who breached a contract with Plaintiff and/or who became unjustly enriched at the expense of Plaintiff and/or who or which is the alter ego or the predecessor or successor in interest to any of the above-named fictitiously described Defendants; Plaintiff aver that the identities of all the foregoing fictitious party Defendants are otherwise unknown to Plaintiff at this time, or if their names are known to Plaintiff at this time, their identity as proper party Defendants is not known to Plaintiff at this time, but whose true and correct names will be substituted by amendment when the aforesaid lacking information is ascertained., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO: **07 C 50 249** <br><br> JUDGE: Reinhard <br><br> <u>JURY TRIAL DEMANDED</u> |
| Defendants. | ) | |

1

## CLASS ACTION COMPLAINT

NOW COMES Plaintiff, MILL STREET CLINIC PHARMACY, INC. (hereinafter "Mill Street" or "Plaintiff"), individually and on behalf of a class of all persons or entities throughout the United States who are similarly situated, and files this Complaint against the Defendants, Caremark Rx, LLC, dba Caremark Rx, Inc. and Caremark, Inc., (hereinafter collectively referred to as "Caremark" or "Defendant"). In support thereof, the Plaintiff states the following:

## NATURE OF THE CASE

1.    Through a fraudulent, unlawful and unfair course of conduct, Defendant has, over the course of many years, knowingly, intentionally and willfully withheld reimbursement payments to Plaintiff and members of the putative class. Defendant leverages its large market share over Plaintiff and thousands of other independently owned pharmacies in an unlawful scheme designed to maximize its profits at the expense of small pharmacies.

2.    Plaintiff was an independently owned pharmacy. Defendant is a pharmacy benefit management company. Between 1984 and 2002, Plaintiff entered into contractual agreements with Defendant on a renewal basis pursuant to which Plaintiff agreed to dispense prescription medications to Defendant's insureds, members or clients. The contracts between Plaintiff and Defendant contain provisions which require Defendant to reimburse Plaintiff for filling prescription medications at a rate which is determined by using the Average Wholesale Price ("AWP") of a medication. For years, Defendant has failed to reimburse Plaintiff and members of the putative class pursuant to the agreed upon rate as alleged herein. Defendant's scheme is two-fold. First, Defendant systematically reimburses pharmacies at a lower rate than required under the contracts. Second, Defendant systematically reimburses pharmacies at a later

date than required under the contract, thereby maximizing its profits on the "float" of Plaintiff's money. Defendant has employed this unlawful scheme for decades on a nationwide basis.

## JURISDICTION AND VENUE

3.    Jurisdiction over the causes of action in this Complaint is conferred by 28 U.S.C. § 1332(a)(1) as this matter is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs.

4.    Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Northern District of Illinois Western Division, because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## PARTIES

5.    Mill Street Pharmacy, Inc. (hereinafter "Mill Street") was a corporation incorporated under the laws of the State of Illinois with its primary place of business in Naperville, Illinois. Mill Street was an independent pharmacy whose primary business was the dispensing and sale of prescription drugs. Robert H. Scurr was the president of Mill Street.

6.    Defendant Caremark Rx, Inc. ("Caremark Rx") is a Delaware corporation with its headquarters located at 211 Commerce Street, Suite 800, Nashville, Tennessee. Caremark Rx, Inc. is one of the largest pharmaceutical companies in the United States. Caremark Rx's operations are carried out through Caremark, Inc., a wholly-owned subsidiary of Caremark Rx, Inc., (hereinafter both Caremark, Inc., and Caremark, Rx are collectively referred to as "Caremark"). Caremark, Inc. is a Pharmacy Benefit Manager that provides pharmacy benefit management services to employers, unions, and health plans throughout the United States. Upon information and belief, Caremark acquired and/or merged with AdvancePCS on or about March 24, 2004.

3

7.    Defendants fictitiously described as "A," "B," and "C," are otherwise unknown to Plaintiff at this time, or if their identities are known to Plaintiff at this time, their identity as proper party Defendants is not known to Plaintiff at this time, but their true and correct names will be substituted by amendment when the aforesaid information is ascertained.  It is alleged that Caremark is responsible for the actions or inactions of the above fictitious parties under the doctrines of respondeat superior, joint and several liability, agency and/or other doctrines.  It is further alleged that the fictitious Defendants are responsible for the actions or inactions of Caremark and its agents and employees under the doctrines of respondeat superior, joint and several liability, agency and/or other doctrines.

8.    Caremark and the fictitious Defendants acted in concert by defrauding Plaintiff and breaching its contracts with Plaintiff and the putative class through a coordinated inter-corporate relationship.  Each Defendant was and is an active participant in the misleading, unlawful, fraudulent, and unconscionable practices described herein.

9.    At all relevant times, each Defendant, including any fictitious Defendants, was an agent, representative and/or employer of each other Defendant.  In committing the acts alleged herein, the Defendants acted within the scope of their agency and/or employment and were acting with the consent, permission, authorization and knowledge of all other Defendants and perpetrated and/or conspired with and/or aided and abetted the unlawful and fraudulent acts described herein.

## CLASS ALLEGATIONS

10.    Plaintiff brings this action as a nationwide class action pursuant to Federal Rules of Civil Procedure Rule 23.  The requirements of subparts 23(a) and (b)(l), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure are met.  This class is more specifically defined as follows:

4

All pharmacies and/or other similar entities who entered into a contract with Caremark or its predecessor(s) at any time within ten (10) years prior to the filing of this Complaint, which contract required Caremark to reimburse the pharmacy and/or other similar entity at a rate which is a function of the Average Wholesale Price ("AWP"); but excluding (1) pharmacies who are currently in bankruptcy; (2) pharmacies and/or other similar entities whose obligations to Caremark have been modified or discharged in bankruptcy and (3) any governmental agency or entity.

11.    Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the Rule 23 Class period has had, a controlling interest in Defendants; the Judge to whom this case is assigned and any member of the Judge's immediate family; and all persons who will submit a timely and otherwise proper request for exclusion from the Rule 23 Class.

12.    **Numerosity:**    The persons in the Rule 23 Class identified above are geographically diverse and so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendant.

13.    **Commonality**:    There are numerous questions of law and fact common to the Rule 23 Class that predominate over any questions affecting only individual members. The questions of law and fact common to this Rule 23 Class that predominate over any question solely affecting individual members of the Rule 23 Class, including but are not limited to:

(a)    whether Defendant had access to the current or correct Average Wholesale Price of prescription medications;

(b)    whether Defendant failed to make reimbursement payments using the true Average Wholesale Price of prescription medications;

(c)    whether Defendant knowingly, intentionally and/or willfully failed to make reimbursement payments using the true Average Wholesale Price of prescription medications;

(d)    whether Defendant failed to make timely reimbursement payments;

(e)    whether Defendant knowingly, intentionally and/or willfully failed to make timely reimbursement payments;

(f)    whether Defendant concealed, suppressed and/or omitted the fact that it did not intend to make reimbursement payments properly and/or timely;

(g)    whether Defendant knowingly, intentionally and/or willfully concealed, suppressed and/or omitted the fact that it did not intend to make reimbursement payments properly and/or timely;

(h)    whether Plaintiff and class members are entitled to injunctive relief;

(i)    whether Plaintiff and class members are entitled to punitive damages;

(j)    whether Plaintiff and class members are entitled to treble damages;

(k)    Whether the conduct of Defendant, as alleged in this Complaint, caused damages to the Plaintiff and the other members of the Class; and

(l)    The appropriate measure of damages sustained by Plaintiff and other members of the Class.

14.    **Typicality**: The claims of the named Plaintiff are typical of the claims of the defined class, within the meaning of Fed. R. Civ. P. 23(a)(3), and are based on and arise out of the same unlawful business practices of the Defendants. The proposed named Plaintiff states claims for which relief can be granted that are typical of the claims of absent class members. If

6

litigated individually, the claims of each class member would require proof of the same material and substantive facts, rely upon the same remedial theories, and seek the same relief.

15.    **Adequacy:**  The named Plaintiff is committed to pursuing this action and is prepared to serve the proposed class in a representative capacity with all of the obligations and duties material thereto.  The named Plaintiff will fairly and adequately represent the interests of the members of the class within the meaning of Fed. R. Civ. P. 23(a)(4), and have no interest adverse to, or which directly and irrevocably conflict with, the interests of the other class members.

16.    The named Plaintiffs have retained competent counsel experienced in class action litigation.  Said counsel will adequately prosecute this action, and will assert, protect and otherwise, will represent the named class representatives and absent class members.

17.    **Superiority:**  A class action is superior to other available methods for their fair and efficient adjudication of the controversy – particularly in the context of rate reimbursement litigation, where small pharmacies lack the financial resources to vigorously prosecute separate lawsuits in federal Court against a large corporate Defendant like Caremark.

18.    The Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

19.    **Rule 23(b)(1)(A) and (B):**  The prosecution of separate actions by individual class members would create a risk of adjudication with respect to individual class members which would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to this action, or could substantially impair or impede their ability to protect their interests.

20.    The prosecution of separate actions by individual members of the class would create a risk of inconsistent of varying adjudications with respect to individual members of the class which would establish incompatible rights within the plaintiff class.

21.    **Rule 23(b)(2):**  The Defendant's actions are generally applicable to the class as a whole, and Plaintiff seeks equitable remedies with respect to the class as a whole, within the meaning of Fed. R. Civ. P. 23(b)(2).

22.    **Rule 23(b)(3):**   The common questions of law and fact enumerated above predominate over individual questions, and a class action is a superior method for the fair and efficient adjudication of this controversy, within the meaning of Fed. R. Civ. P. 23(b)(3). Common or general proof will be used by each class member to establish each element of their claims.   Additionally, proceeding as a class action is superior to other available methods of adjudication.  The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation since the cost of litigation may exceed what any one class member has at stake.

## FACTUAL ALLEGATIONS

23.    Plaintiff Mill Street Pharmacy was duly incorporated under the laws of the state of Illinois in 1984.  Plaintiff dissolved in 2002.

24.    Between 1984 and 2002, Plaintiff entered into a series of contracts with Defendant whereby Plaintiff agreed to dispense prescription medications for Defendant's insureds, members or clients and Defendant agreed to reimburse Plaintiff at a rate which is a function of the Average Wholesale Price of the various prescription medications.  For example, one such contract states the reimbursement rate as:

8

**"Reimbursement Rate:**

**Brand AWP – 14% +$2.00**

**Generic HCFA + $2.50 if no HCFA, AWP – 14% + $2.50"**

*A true and correct copy of one of the contracts between Plaintiff and Defendant is attached hereto as Exhibit A.*

25.     Each of the contracts required Defendant to reimburse Plaintiff within a set amount of time from the date on which Plaintiff dispensed the prescription medications to Defendant's clients and/or insureds. For example, the attached form contract required "payment shall be made at least monthly by Caremark." *See Exhibit A, ¶ 4.*

26.     Beginning at a date unknown, Defendant began engaging in the unfair, unlawful, fraudulent, wrongful and deceptive practice of failing to fully, timely and properly reimburse Plaintiff for filling prescriptions on behalf of its insureds, members or clients. This fraudulent conduct includes Defendant's failure to properly reimburse Plaintiff the Average Wholesale Price ("AWP") of prescription medications pursuant to the terms of the parties' contracts.

27.     The contracts between Plaintiff and Defendant provide that Defendant will reimburse Plaintiff an amount which is arrived at by using the Average Wholesale Price for filling a prescription for medication. Despite Defendant contracting with Plaintiff to reimburse Plaintiff at a rate which is a function of the AWP, Defendant failed to reimburse Plaintiff in this manner.

28.     AWP is the average of the prices charged by national drug wholesalers for a given prescription drug. AWP is electronically updated by the manufacturer or distributor of the medication on a current or correct basis. Accordingly, AWP is readily ascertainable and easily definable. AWP is reported to pharmacies, insurance companies, pharmacy benefit managers

9

and the public by third-party publications such as Red Book, Blue Book and Medispan. Typically, pharmacy benefit reimbursement contracts, like the ones between Plaintiff and Defendant, require pharmacy benefit managers to reimburse pharmacies based upon a percentage tied to AWP (i.e. AWP minus 14%) plus pay the pharmacy a dispensing fee (i.e. $2.00).

29.     Despite having access to current or correct AWP information, Defendant deliberately refused to fully reimburse Plaintiff at a rate which is a function of the true AWP. Defendant intentionally and routinely reimbursed Plaintiff and the putative class at a rate lower than a function of the true AWP.   Upon information and belief, Defendant engaged in this unlawful, fraudulent and deceptive business practice to maximize profits.

30.     Despite having a contractual obligation to reimburse Plaintiff and members of the putative class timely, as set forth in the contracts, Defendant intentionally and routinely failed to timely reimburse Plaintiff and members of the putative class according to the terms of their contracts.  Upon information and belief, Defendant engaged in this unlawful, fraudulent and deceptive business practice to maximize profits by making money off the "float."

31.     Accordingly, Defendant has retained monies that belong to Plaintiff.   Upon information and belief, Defendant engaged in the unlawful, fraudulent and deceptive practices alleged herein in order to maximize its profits.

32.     Defendant has concealed, suppressed and/or omitted from Plaintiff the fact that Defendant does not have the intent to fully, properly or timely reimburse Plaintiff in accordance with the terms of the parties' contractual agreement.

33.     Defendant's policy and practice of failing to fully, properly and timely reimburse pharmacies has dramatically increased the profits of Defendant throughout the entire United

States. Defendant has defrauded countless pharmacies based upon this practice and further has breached numerous contracts.

34. Defendant carried out each of the unlawful, unfair and deceptive business practices alleged herein with knowledge, intent and/or willfulness.

35. Plaintiff has been damaged in that Plaintiff has not been reimbursed pursuant to the terms of the contractual agreements with Defendant.

## COUNT I

## BREACH OF CONTRACT

36. Plaintiff adopts, re-alleges and incorporates each and every allegation set forth above as though fully set forth herein.

37. Between 1984 and 2002, numerous written contracts and/or renewal contracts were entered into between Plaintiff and Defendant.

38. Plaintiff fully performed its obligations under the terms of the contracts. Defendant failed to perform its obligations pursuant to the terms of the contracts.

39. Defendant's practice of failing to fully, properly and timely reimburse Plaintiff for prescription medications as set out heretofore constitutes a breach of contract for which Plaintiff has been damaged.

40. Moreover, Defendant's practice of failing to properly reimburse Plaintiff based upon current or correct AWP prices for prescription medications as set out heretofore constitutes a breach of contract for which Plaintiff has been damaged.

41. Defendant's breach of contract caused Plaintiff to lose money. Plaintiff has suffered severe damages as a direct and proximate result of Defendant's breach as alleged herein.

Plaintiff is entitled to compensatory damages in an amount equal to the contract amount minus the amount reimbursed by Defendant, plus interest.

## COUNT II

### FRAUDULENT MISREPRESENTATION/CONCEALMENT

42.     Plaintiff adopts, re-alleges and incorporates each and every allegation above, as though fully set forth herein.

43.     At all times material hereto, Defendant was under a duty to not misrepresent, conceal, suppress or omit material facts regarding the true nature of their pharmacy benefit reimbursement program outlined in the parties' contracts. This includes, but is not limited to, the AWP reimbursement program. Defendant knowingly, intentionally, willfully, recklessly and/or or negligently concealed, suppressed and/or omitted the material fact that it would <u>not</u> fully, properly and timely reimburse Plaintiff for any prescription that Plaintiff filled in accordance with the terms of their contractual agreement.

44.     The concealment, suppression and/or omission of these material facts was intended to induce a false belief that Defendant would reimburse Plaintiff according to the terms of the contract and Plaintiff and the putative class relied Defendants concealment, suppression and/or omission in entering into the contracts. Plaintiff and the putative class would have acted differently but for the concealment, suppression and omission of the material facts as alleged herein.

45.     Specifically, Defendant misrepresented to and/or concealed, suppressed and/or omitted from Plaintiff the following information:

        a.     that Defendant would not fully, timely and properly reimburse Plaintiff;

b.      that Defendant would not reimburse Plaintiff and putative class members according to the Average Wholesale Price (concealment, suppression and/or omission);

c.      that Defendant would reimburse Plaintiff and putative class members according to the Average Wholesale Price (misrepresentation);

d.      By suppressing and/or misrepresenting the facts alleged herein which constitutes engaging in a pattern and practice of untruthful statements, false representations, concealment, and intent to mislead in its contractual agreements;

e.      By failing to disclose that Defendant either did not have access to or would not reimburse Plaintiff and putative class members based upon the current or correct Average Wholesale Price;

f.      By failing to disclose the method upon which Defendant would determine the Average Wholesale Price of a brand name prescription medication;

g.      By failing to send Plaintiff and other pharmacies enough information to make an informed decision regarding Defendant's AWP reimbursement program;

h.      By charging Plaintiff an unconscionable fee and engaging in unconscionable practices.

46.     By knowingly, intentionally, willfully, recklessly or negligently misrepresenting, concealing, suppressing and/or omitting the nature of its prescription medication reimbursement program, Defendant has taken advantage of Plaintiff, who based upon such misrepresentations, concealments, suppressions and/or omissions, was misled into entering into the contracts and has

13

suffered damages as a result. Moreover, by knowingly, intentionally, willfully, recklessly or negligently misrepresenting, concealing, suppressing and/or omitting the nature of its formula for determining AWP for reimbursement purposes, Defendant has taken advantage of Plaintiff, who based upon such misrepresentations, concealments, suppressions and/or omissions, was misled into entering into the contract and has suffered damages as a proximate result.

47.    Defendant misrepresented, concealed, suppressed and/or omitted this information, with the intent and ultimate result that Plaintiff and other pharmacies would accept reimbursement without question or negotiation. At the time Defendant misrepresented, concealed, suppressed and/or omitted this information from Plaintiff, Defendant knew or should have known that it was under a duty to communicate the true nature of its prescription medication reimbursement program.

48.    By misrepresenting, concealing, suppressing and/or omitting the nature of their AWP reimbursement program and not disclosing material information concerning such program, Defendant has taken advantage of Plaintiff, who based upon such omissions, was misled into accepting less than full reimbursement. Defendant further suppressed the fact that it would not honor the terms of the parties' contractual agreement concerning timely and proper reimbursement and that they would not fully reimburse Plaintiff for AWP on prescription medications. Such nondisclosure constitutes a misrepresentation, concealment, suppression and/or omission that Defendant knew or should have known and had a duty to communicate.

49.    Plaintiff and members of the putative class have suffered severe damages as a direct and proximate result of Defendant's misrepresentations, concealments, suppressions and/or omissions of material facts as alleged herein.

14

50.    Defendant's misrepresentations, concealments, suppressions and/or omissions of material facts have damaged Plaintiff for which Plaintiff seeks restitution of the contract amount minus the amount reimbursed by Defendant, plus interest, as well as all other damages resulting from such misrepresentations and suppressions.

## COUNT III

### ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT 815 ILCS 505/2 and the ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT 815 ILCS 510/2 AND THE SIMILAR OR IDENTICAL STATE STATUTES OF THE VARIOUS STATES

51.    Plaintiff adopts, re-alleges and incorporates each and every allegation above, as though fully set forth herein.

52.    At all relevant times herein, there were in full force and effect in the State of Illinois statutes commonly known as the *Illinois Uniform Deceptive Trade Practices Act* 815 ILCS 510/2 and the *Illinois Consumer Fraud and Deceptive Business Practices Act,* 815 ILCS 505/2. The Illinois Uniform Deceptive Trade Practices Act provides in pertinent part as follows:

> *Unfair methods of competition and unfair deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression or omission of any material fact with the intent that others rely upon the concealment, suppression or employment of any practice described in section 2 of the "Uniform Deceptive Trade Practices Act," approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful where any person has in fact been misled, deceived or damaged thereby. In construing this section, consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to section 5(a) of the Federal Trade Commission Act.*

53.    The Illinois Consumer Fraud and Deceptive Business Practices Act further provides, in 815 ILCS 505/10(a), as follows:

15

*Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper...*

54.    Plaintiff and each member of the putative class is a consumer within the meaning of the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1(e) and/or the similar state law consumer protection acts of their resident state.

55.    At all relevant times Defendant was engaged in a "trade" or "commerce" within the meaning of the *Illinois Consumer Fraud and Deceptive Business Practices Act,* 815 ILCS 505/2 and the *Illinois Uniform Deceptive Trade Practices Act.*

56.    Other various states have identical or substantially similar state law statutes prohibiting misrepresentation, concealment, suppression and/or omission of material facts.

57.    By means of the actions alleged above, Defendant has misrepresented, concealed, suppressed and/or omitted material facts with the intent that others rely thereon in the conduct of trade or commerce.

58.    The conduct of Defendant as alleged herein constitutes the use or employment of deception, fraud, false pretense, false promise, misrepresentation and the concealment, suppression or omission within the meaning of the *Illinois Consumer Fraud and Deceptive Business Practices Act,* 815 ILCS 505/2 and the *Illinois Uniform Deceptive Trade Practices Act* 815 ILCS 510/2, and the applicable similar state law consumer protection statutes of the various states.

59.    The conduct of Defendant as alleged herein constitutes the use or employment of deception, fraud, false pretense, false promise, misrepresentation and the concealment, suppression or omission of a material fact with the intent that Plaintiff and all members of the

class rely upon the concealment, suppression and/or omission of such material fact as to constitute a violation of the *Illinois Consumer Fraud and Deceptive Business Practices Act,* 815 ILCS 505/2 and the *Illinois Uniform Deceptive Trade Practices Act* 815 ILCS 510/2, and the applicable similar state law consumer protection statutes of the various states.

60.     Defendant knew, or should have known, that its actions violated the *Illinois Consumer Fraud and Deceptive Business Practices Act,* 815 ILCS 505/2 and the *Illinois Uniform Deceptive Trade Practices Act,* 815 ILCS 510/2.

61.     Defendant has knowingly, intentionally, willfully and deliberately misrepresented, concealed, suppressed and/or omitted material facts with the intent that Plaintiff and the class rely on the misrepresentations, concealments, suppressions and/or omissions.

62.     Defendant's misrepresentations, concealments, suppressions and/or omissions were relied upon by Plaintiff and the putative class members, who were deceived thereby.

63.     Defendant's illegal actions, as alleged herein, constitute unfair methods of competition under the laws and the common law of Illinois, and other similar state laws and common law.

64.     Plaintiff and each member of the putative Class have suffered actual economic damages, injuries, and other related damages as a direct and proximate result of the aforesaid violations.

65.     Defendant's actions have caused, and will continue to cause, substantial and irreparable harm, damage, and injury to Plaintiff, the class, and the public.

66.     Unless Defendant is enjoined from continuing their illegal actions, Defendant will continue to misrepresent, conceal, suppress and/or omit material facts, as alleged above, thus tending to render judgment in the instant action ineffectual.

67.    Plaintiff and the class have no adequate remedy at law because Defendant will continue to misrepresent, conceal, suppress and/or omit material facts, as alleged above, thus engendering a multiplicity of judicial proceedings.

68.    Accordingly, Plaintiff and the Class are entitled to monetary damages, legal relief and equitable relief.

69.    Plaintiff and each member of the class have suffered severe damage as a direct and proximate result of Defendant's violations of the *Illinois Consumer Fraud and Deceptive Business Practices Act,* 815 ILCS 505/2 and the *Illinois Uniform Deceptive Trade Practices Act* 815 ILCS 510/2, and the applicable similar state law consumer protection statutes of the various states.

## COUNT IV

## UNJUST ENRICHMENT

70.    Plaintiff adopts, re-alleges and incorporates each and every allegation set forth above as though fully set forth herein.

71.    This Count is brought in the alternative to any contract and statutory claims.

72.    By the unlawful scheme alleged herein, Defendant unjustly derived a benefit from Plaintiff and the class in the form of lower reimbursement payments to Plaintiff and the class, the use of Plaintiff's and class members money in "float" and other economic and related benefits and commercial gain, to which Defendant had no right or entitlement.    The benefits to Defendants were conferred as a result of Defendant's deception, misconduct, misrepresentations, concealments, suppressions and/or omissions to Plaintiff and the class as alleged herein.

73.    It would be unjust to allow the Defendant to retain the said benefit, thereby enriching them, without compensating Plaintiff and the class.

18

74.    Accordingly, Plaintiff and the class are entitled to monetary damages, legal relief,
equitable relief and/or otherwise more fully described in the Prayer for Relief.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

i.    Acceptance of jurisdiction of this cause;

ii.    Certification of this case as a class action pursuant to Rule 23 of Federal Rules of
Civil Procedure;

iii.    Designation of the Plaintiff as representative of the Rule 23 Class, and counsel of
record as Class Counsel;

iv.    Damages sufficient to compensate Plaintiff and the Rule 23 Class for their
injuries;

v.    A preliminary and permanent injunction against the Defendant and its partners,
officers, owners, agents, successors, employees, representatives and any and all
persons acting in concert with it, from engaging in any further unlawful practices
and policies as set forth herein;

vi.    Pre-judgment and post-judgment interest;

vii.    Reasonable attorney's fees and costs of this action;

viii.    Punitive damages and/or treble damages as allowable by law; and

ix.    Any and all other relief that this Honorable Court may deem just and equitable.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial
by jury on all questions of fact raised by the complaint.

19

Dated:  December 21, 2007.                 Respectfully submitted,

                                           Peter L. Currie, Esq. (#06281711)
                                           THE LAW FIRM OF PETER L. CURRIE, P.C.
                                           536 Wing Lane
                                           Saint Charles, Illinois 60174
                                           Telephone: (630) 862-1130
                                           Facsimile:  (630) 845-8982

                                           *Attorney for Plaintiff*

# EXHIBIT A

# CAREMARK

Prescription Service Division

August 1, 1995

## Final Notice To Join Care Select Network

Dear Pharmacy:

Caremark is awaiting your response to join a select network of pharmacies (Care Select) to provide service to fill over 10 million prescriptions annually. Some of the companies now in this group are Sears, Allstate, Midwest Employees Benefit Coalition and Amoco to name a few. Besides the conversion of some existing groups like Sears, Allstate and Amoco, it is expected that this select network will be the primary network used by future employee groups selecting Caremark as their P.B.M. and wanting a select group of pharmacies. **If you are providing service to continue service, now we encourage you to participate in order to continue service.** Thank you for your consideration. Please fax your response by August 16, 1995 to Caremark at (708) 634-7599.

### Reimbursement Rate:
Brand AWP -14% +$2.00
Generic HCFA +$2.50 if no HCFA, AWP -14% + $2.50

If you have questions please phone Caremark Provider Relations at (708) 634-7580.

Regards,

Caremark Prescription Service Division

Return to:
**Caremark Prescription Service Division, Provider Relations**
(708) 634-7580
111 Barclay Blvd. Suite 120
Lincolnshire, IL 60069



## PARTICIPATING PHARMACY AGREEMENT

THIS PARTICIPATING PHARMACY AGREEMENT ("Agreement"), dated as of _____ ("Effective Date"), is between Caremark Inc., ("Caremark"), having its address at 2211 Sanders Road, Northbrook, IL 60062 Attention: Retail Network Management Fax: 847/559-3646 and the pharmacy whose name and address is set forth below ("Pharmacy"):

Pharmacy "DBA" Name: _____

Location Address: _____

City: _____ State: _____ Zip: _____ - _____

Phone: ( ) _____ - _____ Fax: ( ) _____ - _____

Mailing Address: _____

City _____ State: _____ Zip: _____ - _____

Contact Person: _____ Phone: ( ) _____

NABP# _____ Federal Tax I.D.#: _____
(Attach list if multiple NABP#s.)

Type of Pharmacy Practice:   ☐ retail   ☐ mail service   ☐ long term care   ☐ hospital   ☐ clinic   ☐ other _____

Type of Ownership:   ☐ independent   ☐ chain

The parties agree as follows:

1. **Responsibilities of Pharmacy.** Pharmacy shall dispense prescriptions to members covered under prescription benefits plans ("Plans") administered by various plan sponsors or their administrators ("Payors"). Such prescriptions shall be dispensed in accordance with the information communicated by Caremark to Pharmacy, applicable state and federal law, and applicable pharmacy practice standards, including all counseling and DUR requirements. Pharmacy shall at all times maintain all applicable licenses and permits, and shall provide evidence of the same to Caremark at Caremark's request. Pharmacy shall comply with accreditation standards as reasonably required by Caremark or Payors. Pharmacy agrees to always collect the applicable copayment as adjudicated by Caremark and to never discount or waive such copayment or to collect a greater amount. Pharmacy agrees to provide services to covered members of Plans with a degree of care, skill and attention at least as high as that provided to the general public. Should Pharmacy require the use of an intermediary, such as Envoy, GCC or NDC, to transmit to Caremark, Pharmacy shall be responsible for any applicable fees. Pharmacy shall adjudicate prescriptions through Caremark utilizing NCPDP software version 3.2 or higher. Pharmacy is responsible for maintaining all hardware and software necessary to support the prevailing pharmacy practice standards. Pharmacy shall require the signature of the patient or patient's representative on a permanent record before dispensing any prescription.

2. **Review of Records.** Pharmacy shall maintain all prescription records as required by applicable state and federal law. During business hours and upon reasonable notice, Pharmacy shall provide Caremark with access to review and copy all prescription records, patient medication profiles, billing records and signature records relating to services provided pursuant to this Agreement, as well as insurance, licensure and accreditation records and other business records as reasonably required to confirm compliance with Pharmacy's obligations under this Agreement. The terms of this Section shall survive the termination of this Agreement for any reason.

3. **Eligibility and Coverage.** Claim adjudication, drug utilization review and other edits shall be performed through electronic linkage to Caremark. Pharmacy shall access such electronic linkage with Caremark for each prescription dispensed. Verification of eligibility, drug coverage and other applicable edits to Pharmacy via the electronic linkage constitutes authorization for Pharmacy to service the Plan member. Caremark is not responsible for transmission errors of any kind. The terms of this Section shall survive the termination of this Agreement for any reason.

4. **Payment.** Pharmacy is entitled to reimbursement for each prescription dispensed to a Plan member at the lower of: (a) the amount applicable to a given Plan or (b) Pharmacy's usual and customary price (i.e., Pharmacy's cash price to the general public at the time of dispensing inclusive of all coupons, discounts, and other deductions), provided that Pharmacy has verified the requisite eligibility and coverage authorization and that Pharmacy has complied with all other applicable Plan

design features as defined in the Plan description. Pharmacy agrees to submit claims for payment to Caremark not later than thirty (30) days after the date of service. Pharmacy agrees to pay an administrative transactional fee of $.10 per transmission to Caremark. Any dispute as to payment must be brought to Caremark's attention within sixty (60) days after Pharmacy receives the disputed payment from Caremark. Any such dispute shall be governed by Caremark's grievance policy as then in effect. Payment shall be made at least monthly by Caremark. In the event that the prescription is not picked up within two (2) weeks of transmission, Pharmacy shall make a claim to reverse the prescription and if payment has been made to Pharmacy, Caremark shall be entitled to reimbursement. Caremark may offset any amounts owing to Caremark against amounts to be paid to Pharmacy. The terms of this Section shall survive the termination of this Agreement for any reason.

5. **Indemnification/Insurance.** Each party shall indemnify and hold harmless the other party, its directors, officers, employees and agents against all claims, liabilities, losses, damages, costs or expenses of any kind which arise as a result of the negligence or misconduct of the indemnifying party in performing any services under this Agreement. Each party shall maintain professional liability and general liability insurance in adequate amounts to cover their risks under this Agreement, but not less than $1,000,000 in professional liability coverage. Each party shall provide a current certificate of coverage to the other party upon request. The terms of this Section shall survive the termination of this Agreement for any reason.

6. **Term and Termination.** The initial term of this Agreement shall be twelve (12) months from the Effective Date. Thereafter, the term shall be automatically renewed annually for successive additional twelve (12) month periods, subject to the right of either party to terminate this Agreement upon at least 90 days prior written notice; provided, however that Caremark shall also have the ability to terminate this Agreement effective upon receipt of notice by Pharmacy, for breach of this Agreement or for other good cause.

7. **Advertising and Promotion.** Pharmacy agrees that it shall display any signage provided by Caremark. Pharmacy may advertise that it is a member of Caremark's network of retail pharmacies. Pharmacy shall cease any and all such usage immediately upon termination of this Agreement.

8. **Miscellaneous Provisions.**

A. This Agreement supersedes all prior or contemporaneous understandings or contracts, and constitutes the entire agreement existing between the parties regarding the subject matter of this Agreement. No waiver or discharge of any breach of this Agreement shall be effective unless it is in writing signed by the other party. Any waiver of any breach of any provision of this Agreement shall not be a waiver of any subsequent breach of any provision of this Agreement. This Agreement may not be modified except in writing signed by both parties.

B. Neither party shall be liable for failure or delay of performance arising from an act of God or other events beyond control of a party, such as an act of a regulatory agency, fire, flood, explosion, strike, labor stoppage, computer malfunction or act of war or rebellion.

C. Each party shall comply with the provisions of all applicable federal, state and local laws and regulations in connection with the subject matter of this Agreement. Neither party shall make payments or perform any services under this Agreement that would be prohibited by law. No part of this Agreement shall be construed to induce or encourage the referral of patients, and no payment made pursuant to this Agreement or any other agreement between Caremark and Pharmacy shall be construed to induce the purchase, lease, order or arrangement for the furnishing of healthcare products or services.

D. All notices provided for in this Agreement shall be in writing and shall be sent by registered or certified mail or by overnight courier addressed to the other party at the address listed above.

E. This Agreement and its interpretation shall be governed by the internal laws of the State of Illinois (without regard to its conflict of laws rules).

IN WITNESS WHEREOF, authorized representatives of the parties have signed this Agreement.

**CAREMARK INC.**

By: _Grace Rodes_
(Authorized Signature)

Title: <u>VP - Retail Network Management</u>

Date: <u>December 6, 1996</u>

_____
(Name of Pharmacy)

By: _____
(Authorized Signature)

Title: _____

Date: _____

**Please sign both copies and return one to Caremark.** If multiple stores, please attach additional listing with information for all categories listed in the first paragraph of this Agreement.

CRKCNTPR.DOC 11/96