# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

MILL STREET CLINIC PHARMACY, INC., )
individually and on behalf of all others )
similarly situated, )
)
   Plaintiff, )
)
)
  vs. )
)
CAREMARK RX, L.L.C., CAREMARK RX, )
INC., CAREMARK, INC., CAREMARK, )
L.L.C., AND CVS CAREMARK )
CORPORATION, )
)
   Defendants. )
)
)
)

Case No. 07 C 50249

The Honorable Philip G. Reinhard

Magistrate Judge P. Michael Mahoney

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO RULE 12(B)(3) OR, IN THE ALTERNATIVE, TO TRANSFER IN THE INTEREST OF JUSTICE,
## -- AND --
## MOTION TO DISMISS PURSUANT TO RULES 9(B) AND 12(B)(6) FOR FAILURE TO STATE A CLAIM

Frank E. Pasquesi (IL Bar No. 6205455)
Robert H. Griffith (IL Bar No. 6237224)
Daniel M. Cordis (IL Bar No. 6285963)
Foley & Lardner LLP
321 North Clark Street
Suite 2800
Chicago, IL  60610
312.832.4500 (Telephone)
312.832.4700 (Facsimile)

*Attorneys for Caremark Rx, L.L.C., Caremark L.L.C. and CVS Caremark Corporation*

# TABLE OF CONTENTS

Page

INTRODUCTION AND BACKGROUND .................................................................. 2

ARGUMENT ............................................................................................................. 5

I.   Venue Is Improper In the Western Division And Dismissal Is Appropriate
     Pursuant To Rule 12(b)(3) and 28 U.S.C. § 1406(a) ............................................ 5

II.  Alternatively, This Court Should Transfer This Action To The Eastern
     Division In The Interest Of Justice ...................................................................... 6

III. Mill Street Fails To State A Claim Upon Which Relief Can Be Granted,
     And Its Claims Must Therefore Be Dismissed Pursuant To Rule 12(b)(6) ............ 9

     A.  Mill Street Fails To State A Claim Against Either Caremark Rx Or
         CVS As They Are Plainly Not Parties To Any Contract At Issue ............ 10

     B.  The Complaint Fails To State A Claim For Relief, Because It Fails
         To Allege That Plaintiff Satisfied The Conditions Precedent To
         Suit ...................................................................................................... 11

     C.  This Court Should Dismiss Mill Street's Fraudulent
         Misrepresentation/Concealment Claim As It Is Fatally Flawed In
         Multiple Respects .................................................................................. 12

     D.  Mill Street Fails To State A Valid Claim Under The Illinois
         Consumer Fraud And Deceptive Business Practices Act ......................... 15

         1.  A Consumer Fraud Act Claim Cannot Be Based Solely On
             Breach of Contractual Promises .................................................. 15

         2.  Even If Plaintiff Had An Independent Basis For A
             Consumer Fraud Act Claim, Which It Does Not, Plaintiff Is
             Not A "Consumer" As Required By The Act ............................... 16

         3.  Plaintiff Has Not Alleged Any "Consumer Nexus" .................... 16

         4.  Plaintiff Fails To Plead Consumer Fraud Act Claim With
             Particularity ............................................................................... 17

     E.  The Illinois Uniform Deceptive Trade Practices Act ("UDTPA") Is
         Inapplicable Under Any Logical Interpretation Of That Act .................... 18

     F.  Plaintiff's Unjust Enrichment Claim Must Be Dismissed, Because
         A Valid Contract Exists Between The Parties ......................................... 20

CHIC_2149844.1

G.      Even Were Mill Street's Claims Viable, The Majority Would Be
        Time-Barred ............................................................................................ 20

CONCLUSION ................................................................................................................ 22

CHIC_2149844.1

# TABLE OF AUTHORITY

Page

**FEDERAL CASES**

*APS Sports Collectibles, Inc. v. Sports Time, Inc.*,
   299 F.3d 624 (7th Cir. 2002) ....................................................................................... 10-11

*Athey Prods. Corp. v. Harris Bank Roselle*,
   89 F.3d 430 (7th Cir. 1996) ...............................................................................................17

*Bell Atl. Corp. v. Twombly*,
   127 S. Ct. 1955 (2007).........................................................................................................9

*Bower v. Jones*,
   978 F. 2d 1004 (7th Cir. 1992) ..........................................................................................13

*Carbonara v. Olmos*,
   No. 93 C 2626, 1993 WL 473651 (N.D. Ill. Nov. 15, 1993)................................................7

*DiLeo v. Ernst & Young*,
   901 F.2d 624 (7th Cir. 1990) ..........................................................................................9, 14

*E&E Inv., Inc. v. Simmons Co.*,
   169 F.R.D. 467 (D.P.R. 1996) ...........................................................................................11

*Gallagher Corp. v. Mass. Mut. Life Ins. Co.*,
   940 F. Supp. 176 (N.D. Ill. 1996) ......................................................................................17

*Hanley v. Omarc, Inc.*,
   6 F. Supp. 2d 770 (N.D. Ill. 1998) ......................................................................................8

*Indus. Hard Chrome, Ltd. v. Hetran, Inc.*,
   90 F. Supp. 2d 952 (N.D. Ill. 2000) ....................................................................................9

*Int'l Customs Assocs., Inc. v. Ford Motor Co.*,
   893 F. Supp. 1251 (S.D.N.Y. 1995) ...................................................................................11

*Jefferson Constr. Co. v. United States*,
   283 F.2d 265 (1st Cir. 1960) .............................................................................................11

*JMR Sales, Inc. v. MMC Elec. Am., Inc.*,
   2002 U.S. Dist. LEXIS 19285 (N.D. Ill. Oct. 10, 2002)......................................................16

*Labor Ready, Inc. v. Williams Staffing, LLC*,
   149 F. Supp. 2d 398 (N.D. Ill. 2001) .................................................................................19

CHIC_2149844.1

*Lefebvre Intergraphics, Inc. v. Sanden Mach. Ltd.*,
    946 F. Supp. 1358 ........................................................................................ 13-14

*Morton Grove Pharms., Inc. v. The Nat'l Pediculosis Ass'n, Inc.*,
    485 F. Supp. 2d 944 (N.D. Ill. 2007) .......................................................... 5

*Pearson's Pharmacy, Inc. v. Express Scripts, Inc.*,
    No. 3:06-cv-73, 2007 WL 1655993 (M.D. Ala. June 7, 2007) ............... 13

*Perkins v. Silverstein*,
    939 F.2d 463 (7th Cir. 1991) ................................................................. 9-10, 14

*Pressalite Corp. v. Matsushita Elec. Corp. of Am.*,
    No. 02 C 7086, 2003 WL 1811530 (N.D. Ill. Apr. 4, 2003) ................... 17

*Redfield v. Cont'l Cas. Corp.*,
    818 F.2d 596 (7th Cir. 1987) ................................................................. 11

*Siegel v. J & H Marsh & McLennon, Inc.*,
    159 F. Supp. 2d 1118 (N.D. Ill. 2001) ................................................... 9, 14

*Team Play, Inc. v. Boyer*,
    391 F. Supp. 2d 695 (N.D. Ill. 2005) ..................................................... 21

*U.S. v. Bestfoods*,
    524 U.S. 51 (1998) ................................................................................. 10

*United States v. Preiser*,
    506 F.2d 1115 (2d Cir. 1974) ................................................................. 5

*Wild v. Subscription Plus, Inc.*,
    292 F.3d 526 (7th Cir. 2002) ................................................................. 7

**STATE CASES**

*Ault v. C.C. Servs., Inc.*,
    597 N.E.2d 720 (Ill. App. Ct. 1992) ..................................................... 12-13

*Avery v. State Farm Mut. Auto. Ins. Co.*,
    835 N.E.2d 801 (Ill. 2005) ..................................................................... 15-16

*Hartigan v. E & E Hauling, Inc.*,
    153 Ill. 2d 473 (1992) ............................................................................ 20

*Connick v. Suzuki Motor Co.*,
    675 N.E.2d 584 (Ill. 1996) ..................................................................... 17-18

*Lake County Grading Co. of Libertyville, Inc. v. Advance Mech. Contractors, Inc.*,
    654 N.E.2d 1109 (Ill. App. Ct. 1995) ................................................... 17, 19

iv

**FEDERAL STATUTES**

28 U.S.C. § 1332(d)(a) .................................................................................................2

28 U.S.C. § 1391 ..........................................................................................................2

28 U.S.C §1406(a) ................................................................................................ 1, 5-6

**STATE STATUTES**

735 ILCS 5/13-205 ....................................................................................................21

735 ILCS 5/13-206 ....................................................................................................21

815 ILCS 505/1 ..........................................................................................................16

815 ILCS 510/2 ............................................................................................... 18-19, 21

**RULES**

Fed. R. Civ. P. 12(b)(3) ........................................................................................1, 5, 6

Rule 9(b) ...............................................................................................................*Passim*

Rule 12(b)(6) ...............................................................................................4, 9, 11, 22

v

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| MILL STREET CLINIC PHARMACY, INC., individually and on behalf of all others similarly situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>CAREMARK RX, L.L.C., CAREMARK RX, INC., CAREMARK, INC., CAREMARK, L.L.C., AND CVS CAREMARK CORPORATION, )<br><br>Defendants. ) | Case No. 07 C 50249<br><br>The Honorable Philip G. Reinhard |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS
PURSUANT TO RULE 12(B)(3) OR, IN THE ALTERNATIVE, TO TRANSFER IN THE
INTEREST OF JUSTICE,
-- AND --
MOTION TO DISMISS PURSUANT TO RULES 9(B) AND 12(B)(6)
FOR FAILURE TO STATE A CLAIM**

Defendants Caremark Rx, L.L.C. ("Caremark Rx"), Caremark, L.L.C. and CVS Caremark Corporation ("CVS") (collectively, "the Caremark Defendants"), by their attorneys, Foley & Lardner LLP, submit the following memorandum in support of their motion to dismiss Plaintiff Mill Street Clinic Pharmacy, Inc.'s ("Mill Street") First Amended Class Action Complaint ("Amended Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(3) or, in the alternative, to transfer pursuant to 28 U.S.C §1406(a) due to improper venue, and in the further alternative to dismiss pursuant to Rules 9(b) and 12(b)(6) for failure to state a claim.

## INTRODUCTION AND BACKGROUND

As an initial matter, Plaintiff has failed to set forth a single fact connecting this putative class action lawsuit to the Western Division of the Northern District of Illinois (the "Western Division"). The Amended Complaint simply, and incorrectly, states that, "venue is proper in the [Western Division], because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district." (Am. Cmplt. ¶ 4).[1] However, Mill Street offers nothing to support this conclusory statement. In fact, and as set forth in greater detail below, this matter has no connection to the Western Division which could support venue being appropriate.

Indeed, Mill Street – a dissolved Illinois corporation – admittedly maintained its principal place of business (before it ceased doing business entirely in 2002) in Naperville, Illinois, which is located wholly within the Eastern Division of the Northern District of Illinois (the "Eastern Division"). (Am. Cmplt. ¶ 5). On information and belief, Mill Street operated from approximately 1984 until 2002 and was a member of Caremark, L.L.C.'s pharmacy network for at least a portion of that time.

Caremark, L.L.C. (formerly known as Caremark Inc.) is a California limited liability company which has its principal place of business in Northbrook, Illinois, which is, again, squarely within the Eastern Division. Caremark, L.L.C. is the entity alleged to have contracted with Plaintiff, which contractual relationship gives rise to and is the basis for the

---

[1] Mill Street cites "28 U.S.C. § 1332(d)(a)" as the basis for this Court's subject matter jurisdiction. (*See* Am. Cmplt. ¶ 3). As no such provision exists, and based on other portions of the Complaint, the Caremark Defendants assume Mill Street is alleging diversity jurisdiction under the Class Action Fairness Act – 28 U.S.C. § 1332(d). With respect to venue, Mill Street relies on 28 U.S.C. § 1391(b). However, that venue provision applies only when a court's subject matter jurisdiction is <u>not</u> based on diversity jurisdiction. Thus, the Caremark Defendants assume that Mill Street intended to rely on 28 U.S.C. § 1391(a)(2) as the basis for asserting that venue is proper in the Western Division.

CHIC_2149844.1

instant dispute. Caremark Rx is a Delaware limited liability company that has its principal place of business in Nashville, Tennessee, while CVS is a Delaware corporation with its principal place of business in Woonsocket, Rhode Island. Caremark Rx is the indirect parent of Caremark, L.L.C., and CVS is the ultimate parent of Caremark Rx. Notably, Plaintiff has named Caremark Rx and CVS as defendants in this action based solely on their parent company status, despite having pleaded no facts supporting any basis to pierce the corporate veil between them.

The contract at issue – attached as Exhibit A to the Amended Complaint – also has no connection to the Western Division as it was prepared, sent, received and entered into within the Eastern Division. Further, Caremark, L.L.C. administered and performed its contractual obligations vis-à-vis Mill Street from its offices in Lincolnshire and/or Northbrook, Illinois, both in the Eastern Division. Likewise, Mill Street performed its contractual obligations and received reimbursement from Caremark, L.L.C. at its principal place of business in Naperville in the Eastern Division as well.[2]

In short, Plaintiff has not, and cannot, show any connection between the instant dispute and the Western Division which would support venue being appropriate in this jurisdiction. Accordingly, Defendants' Motion should be granted and this case should be dismissed for improper venue. Alternatively, this matter should be transferred in the interest of justice to the Eastern Division of the Northern District of Illinois.[3]

---

[2] In general, Mill Street claims that Caremark, L.L.C. failed to reimburse it at the appropriate contract prices, and failed to timely make the payments owed by contract thereby making profit on "the float." Any conduct related to such theories – either on the part of Plaintiff or Caremark, L.L.C. – would again have taken place squarely within the Eastern Division (and none within this Division).

[3] Counsel for the Caremark Defendants spoke with counsel for Plaintiff, who advised that he was unaware of any meaningful connections tying this case to the Western Division, and that, if this matter is not simply dismissed for improper venue, he did not believe he would have any

3

Even if this action were not subject to dismissal for being filed in an improper venue, it would still require dismissal pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In essence, Mill Street brings a garden variety breach of contract class action against Caremark L.L.C.[4], claiming that it failed to both fully and timely reimburse Mill Street amounts calculated with reference to the reported Average Wholesale Prices ("AWP") for prescription drugs. In taking the "everything but the kitchen sink" approach, and in apparent hopes that some of its claims might stick, Mill Street tacks on claims for fraudulent misrepresentation, concealment, unjust enrichment and a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act").

Plaintiff's claims are not only without merit, but they are directly refuted by the very documents attached to its Complaint. First, Mill Street has sued improper parties – parent companies Caremark Rx and CVS – who plainly were not parties to any contract at issue which gives rise to Plaintiff's claims, and who Plaintiff concedes have only been sued by virtue of their parent company status – in direct contradiction to well-established law. Further, Mill Street asserts causes of action such as promissory fraud and "fraud by silence" that either do not exist under Illinois law, or have no application in this setting where Caremark, L.L.C. did not, and was never alleged to, have any duty to disclose.

---

objection to the transfer of this matter to the Eastern Division in the interest of justice and for the convenience of the parties.

[4] Caremark L.L.C., formerly known as Caremark Inc., is the entity who contracted with Plaintiff Mill Street. (*See* Ex. A to Am. Cmplt.) Caremark Rx, L.L.C., formerly known as Caremark Rx, Inc., is the indirect parent company of Caremark L.L.C. and has no relationship – contractual or otherwise – with Plaintiff, or any other involvement in the events related to this action. CVS is the indirect parent company of Caremark Rx, L.L.C., and likewise has no relationship – contractual or otherwise – with Plaintiff, or any other involvement in the events related to this action.

Likewise, Plaintiff has tacked on a Consumer Fraud Act claim in direct contradiction to the Illinois Supreme Court's admonishments that such claims cannot stem from an alleged breach of contract. Moreover, Mill Street is not a "consumer" as contemplated by the statute, Mill Street has not identified any "consumer protection concerns" as demanded under the Act, and moreover has failed to plead the elements of the claim with the requisite particularity.

In short, this action should be dismissed.

## **ARGUMENT**

I.     **Venue Is Improper In the Western Division And Dismissal Is Appropriate Pursuant To Rule 12(b)(3) and 28 U.S.C. § 1406(a)**

28 U.S.C. § 1406(a) provides that the, "district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." It is plaintiff's burden to demonstrate that his chosen venue is proper. *See Morton Grove Pharms., Inc. v. The Nat'l Pediculosis Ass'n, Inc.*, 485 F. Supp. 2d 944, 947 (N.D. Ill. 2007). Also, in the context of a putative class action, it is the characteristics of the proposed class representative – and not potential class members – that are important. *See United States v. Preiser*, 506 F.2d 1115, 1129 (2d Cir. 1974) (noting that federal venue provision in a class action "may be satisfied if only the named parties to a class action meet its requirements") (citing *Research Corp. v. Pfister Ass'n Growers, Inc.*, 301 F. Supp. 497, 501 (N.D. Ill. 1969)).

Mill Street has failed to carry its burden to establish venue is proper in the Western Division. The Amended Complaint only contains the conclusory, unsupported statement that, "venue is proper in the [Western Division] because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district." However, the balance of

CHIC_2149844.1

the allegations in the Amended Complaint do not support this claim; in fact, they completely undermine any argument that venue is proper in the Western Division.

As already stated, Caremark L.L.C. (the only entity that purportedly had a contract with Plaintiff) maintains its principal place of business in Northbrook, Illinois (which lies within the Eastern Division), and thus all of its relevant employees are located outside of the Western Division.   Likewise, Mill Street itself admits that it operated and maintained its principal place of business in Naperville, Illinois, which is also located within the Eastern Division, not the Western Division.   Finally, the sample pharmacy reimbursement contract attached to Plaintiff's Complaint, and which purportedly gives rise to this action, was negotiated, prepared, sent, received and entered into within the Eastern Division, and the parties carried out their respective contractual obligations from their respective offices, located in the Eastern Division.

As Mill Street has incorrectly claimed venue in the Western Division, this Court should dismiss the Amended Complaint pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a).

## II.    Alternatively, This Court Should Transfer This Action To The Eastern Division In The Interest Of Justice

Alternatively, since venue is plainly improper in the Western Division, this Court should transfer this lawsuit pursuant to 28 U.S.C. § 1406(a) to the Eastern Division (a division in which the action could have been brought originally) in the "interest of justice."   As stated above, counsel for Mill Street indicated that they did not believe that had any objection to the transfer of this case to the Eastern Division and that no party to this action would be prejudiced thereby.

In considering whether a transfer is appropriate, the Courts look to the following factors:  (1) the plaintiff's choice of forum; (2) the situs of operative facts; (3) ease of access to

6

proof and potential evidence; (4) convenience to the parties and witnesses; (5) the availability of process; and (6) the cost of attendance and other practical problems. *See Wild v. Subscription Plus, Inc.*, 292 F.3d 526, 530 (7th Cir. 2002) (noting that the grounds for transfer under §§ 1404(a) and 1406(a) "closely parallel" each other); *Carbonara v. Olmos*, No. 93 C 2626, 1993 WL 473651, at *1 (N.D. Ill. Nov. 15, 1993) (analyzing convenience factors for purposes of a § 1404(a) transfer motion) (citing *Medi USA, L.P. v. Jobst Inst., Inc.*, 791 F. Supp. 208, 210 (N.D. Ill. 1992)).

As to the first factor, Mill Street's choice of the Western Division as the forum for this action is entitled to no deference under the circumstances since it is not even a resident of the chosen forum. *Carbonara*, 1993 WL 473651 at *2. To the contrary, Mill Street – while it remained in operation – only was a resident of the Eastern Division in Naperville, Illinois. Also, "[t]he plaintiff's choice of forum is given less weight when the plaintiff . . . sues derivatively or as a class representative." *Id.* Finally, and perhaps most importantly, Mill Street's filing in the Western Division is given no weight because "the cause of action did not conclusively arise in the chosen forum." *Id.* (citing *Countryman v. Stein Roe & Farnham*, 681 F. Supp. 479, 482-83 (N.D. Ill. 1987)). In fact, and as plainly revealed by the facts highlighted above (and as admitted by Plaintiff's counsel), this case did not arise in, and has no connection to, the Western Division, as the events relating to this matter are entirely tied to the Eastern Division. Therefore, Mill Street's choice of venue here should be afforded no weight.

The balance of the factors also heavily favors transfer of this matter to the Eastern Division. For example, the situs of the dispute in this case plainly is centered in the Eastern Division. Caremark L.L.C. administered its contractual obligations out of its Northbrook, Illinois office where its employees, documents and potential witnesses are located. Likewise,

7

Mill Street itself was located in the Eastern Division, performing its contractual duties and obligations from its office in Naperville, Illinois. As such, virtually all of the proof in this case is located in the Eastern Division, within miles of the federal courthouse in Chicago.

For this same reason, the Eastern Division would best serve the convenience of witnesses (both party and non-party) in this lawsuit. Caremark L.L.C.'s documents, employees, witnesses and facilities are all located in the near Chicago suburbs, and Mill Street has offered no indication that any of its witnesses might be located within the Western Division. Further, the difference in cost to the parties of litigating in the Eastern Division as opposed to the Western Division is negligible. Indeed, it will be <u>more</u> convenient and less costly for the parties and their counsel to litigate this matter in the Eastern Division as they are all located there.[5]

Finally, the interest of justice – to the extent it can be considered a separate factor from the other convenience factors – would be served by transfer to the Eastern Division. Courts have recognized that "the administration of justice is served more efficiently when the action is litigated in the forum that is 'closer to the action.'" *Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 770, 777 (N.D. Ill. 1998) (transferring case to New Jersey because it "is undoubtedly the forum with the more significant contacts to the litigation") (citation omitted). As already stated, the actions pertaining to the dispute in this lawsuit were all taken by both parties in the Eastern Division.

In short, if this matter is not simply dismissed for it being indisputably filed in the wrong venue, then the interest of justice favors the transfer of this action to the Eastern Division, a division in which this action could have, and should have, been brought. Mill Street has failed to carry its burden to establish that venue is proper in the Western Division, but, even

---

[5] There are no practical problems associated with an intra-district transfer from the Western Division to the Eastern Division.

8

disregarding that fact, it is clear this dispute and the vast majority of people who will be involved and the relevant evidence are located squarely within the Eastern Division.

### III.    Mill Street Fails To State a Claim Upon Which Relief Can Be Granted, And Its Claims Must Therefore Be Dismissed Pursuant To Rule 12(b)(6)[6]

A claim is properly dismissed pursuant to Rule 12(b)(6) where a plaintiff has failed to provide the grounds for its entitlement to relief. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). Moreover, while the Court must consider well-pleaded factual allegations as true, the Court should not consider allegations that are overbroad and unsupported by specific factual averments. *Indus. Hard Chrome, Ltd. v. Hetran, Inc.*, 90 F. Supp. 2d 952, 954 (N.D. Ill. 2000). Similarly, mere conclusory allegations or legal conclusions, even if cast in the form of factual allegations, are insufficient to withstand a dismissal under Rule 12(b)(6). *See Perkins v. Silverstein*, 939 F.2d 463, 467 (7th Cir. 1991).

Furthermore, it is axiomatic that Mill Street's fraud-based claims – Counts II and III – must be pled with heightened particularity pursuant to Rule 9(b). In other words, Mill Street must plead with respect to each element the "who, what, when, where, and how" of the purported fraud. *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). To comply with Rule 9(b), a plaintiff must specify "(1) those statements the plaintiff thinks were fraudulent, (2) the speaker, (3) where and when [the misstatements] were made, and (4) why plaintiff believes the statements fraudulent." *Siegel v. J & H Marsh & McLennon, Inc.*, 159 F. Supp. 2d 1118, 1125 (N.D. Ill. 2001).

---

[6] If this Court rules favorably on Defendants' Motion as it relates to venue (as Defendants respectfully submit that it should), then it need not reach or address this portion of Defendants' Motion at this time.

CHIC_2149844.1

As set forth below, Mill Street falls well short of satisfying any of the above standards, and the Amended Complaint should therefore be dismissed.

### A.    Mill Street Fails To State A Claim Against Either Caremark Rx Or CVS As They Are Plainly Not Parties To Any Contract At Issue

Mill Street has named Caremark Rx and CVS as defendants to this action based solely on their status as parent companies (and indirect ones at that) of Caremark L.L.C.[7] Indeed, the Amended Complaint makes no effort to hide this fact, stating simply, in conclusory fashion, that "Defendants are responsible for the actions or inactions of each other as alleged herein as all Defendants are parent corporations and/or subsidiaries and/or predecessors and/or successors and/or alter egos and/or otherwise related entities and each Defendant is a responsible party under the doctrines of responde at [sic] superior, joint and several liability, agency and/or other doctrines." (Am. Cmplt. ¶ 11) However, blanket legal conclusions such as these are insufficient to withstand a motion to dismiss. *See Perkins*, 939 F.2d at 467.

Moreover, Plaintiff's efforts to name the indirect parent companies Caremark Rx and CVS are directly contrary to well-settled law, as "it is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." *See U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998). Further, "in order to pierce the veil between a parent and a subsidiary, a plaintiff must make 'a substantial showing that one corporation is really a dummy or sham for another.'" *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir. 2002). Here, Mill Street has failed to set forth any

---

[7] All of Plaintiff's claims stem from its contract with Caremark, L.L.C. and the lone exhibit to the Amended Complaint demonstrates that neither Caremark Rx nor CVS are parties to that contract.

CHIC_2149844.1

facts or to plead any basis whatsoever to hold either Caremark Rx or CVS liable for the alleged acts of Caremark, L.L.C.

Therefore, because all of Plaintiff's claims stem from purported contractual breaches, and because neither Caremark Rx nor CVS are parties to the pharmacy agreements at issue, Mill Street has failed to state a claim against them and this case must therefore be dismissed. *See APS*, 299 F.3d at 628-31 (affirming dismissal of defendants where plaintiff failed to provide any basis to pierce the corporate veil where defendants were not parties to the contract at issue); *E&E Inv., Inc. v. Simmons Co.*, 169 F.R.D. 467, 468-69 (D.P.R. 1996) (affirming dismissal of claim pursuant to Rule 12(b)(6) where contract referenced in complaint conclusively contradicted plaintiff's allegation that defendant was a party to the contract); *Int'l Customs Assocs., Inc. v. Ford Motor Co.*, 893 F. Supp. 1251, 1255-57 (S.D.N.Y. 1995) (dismissing claim against parent arising out of subsidiary's contract with plaintiff).

### B. The Complaint Fails To State A Claim For Relief, Because It Fails To Allege That Plaintiff Satisfied The Conditions Precedent To Suit

The contract attached to Plaintiff's Complaint unequivocally required that, "[a]ny dispute as to payment must be brought to Caremark's attention within sixty (60) days after [Mill Street] receives the disputed payment from Caremark." (*See* Am. Compl., Ex. A, p. 3). Moreover, "[a]ny such dispute shall be governed by Caremark's grievance policy as then in effect." *Id.* Yet, Plaintiff's Complaint fails to plead that these conditions precedent were satisfied. Plaintiff's failure to plead such compliance necessitates dismissal of the Complaint. *See Redfield v. Cont'l Cas. Corp.*, 818 F.2d 596, 610 (7th Cir. 1987) ("[P]leading the performance of conditions precedent is necessary to state a cause of action for breach of contract."); *Jefferson Constr. Co. v. United States*, 283 F.2d 265, 268 n.2 (1st Cir. 1960)

CHIC_2149844.1

(reversing judgment against defendants because plaintiff failed to plead condition precedent was satisfied). Accordingly, the Complaint should be dismissed.

### C.  This Court Should Dismiss Mill Street's Fraudulent Misrepresentation/ Concealment Claim As It Is Fatally Flawed In Multiple Respects

Plaintiff's fraudulent misrepresentation claim is premised entirely upon Plaintiff's claim that Caremark L.L.C. never intended (in the future) to abide by its contractual obligations to Mill Street. However, it is well-established that Illinois law does not recognize a cause of action for such "promissory fraud." *See Ault v. C.C. Servs., Inc.*, 597 N.E.2d 720, 722 (Ill. App. Ct. 1992).

Ignoring Illinois law, Mill Street alleges fraud by asserting that:

Defendants knowingly, intentionally, willfully, recklessly and/or negligently concealed, suppressed and/or omitted the material fact that it would <u>not</u> fully, properly and timely reimburse Plaintiff for any prescription that Plaintiff filled in accordance with the terms of their contractual agreement. (Am. Cmplt. ¶ 47)

Specifically, Defendants misrepresented to and/or concealed, suppressed and/or omitted from Plaintiff the following information: . . . that Defendants would not reimburse Plaintiff and putative class members according to the [AWP]. (*Id.*, ¶ 49)

Defendants further suppressed the fact that it [sic] would not honor the terms of the parties' contractual agreement concerning timely and proper reimbursement and that they would not fully reimburse Plaintiff for AWP on prescription medication. (*Id.*, ¶ 52)

However, Illinois law does not recognize such a claim of "promissory fraud" under the circumstances applicable here. *See*, *e.g.*, *Ault*, 597 N.E.2d at 722 (affirming dismissal of fraud count because, in general, fraud claim cannot be supported by alleged misrepresentations concerning future intentions).[8] Because it is well-established that Illinois law

---

[8] Mill Street plainly cannot seek to fit its case within the limited "scheme" exception for promissory fraud, as the Amended Complaint makes no attempt to provide "the kind of specific

12

does not recognize a cause of action for the "promissory fraud" that Mill Street has pled, this Court must dismiss Count II of the Amended Complaint.

Mill Street's fraudulent representation and concealment claim is also deficient as it is well-established that Caremark does not owe Mill Street a duty to disclose information simply by virtue of their business relationship. To the contrary, in order to survive dismissal for "fraud by silence" under Illinois law, a plaintiff must establish the existence of a special relationship of which a duty to disclose arose in the first place. *See Lefebvre Intergraphics, Inc. v. Sanden Mach. Ltd.*, 946 F. Supp. 1358, 1366-68 (highlighting that under Illinois law, silence can only be fraudulent if a party is under a duty to disclose information, and "silence in a business transaction is not enough to constitute fraud"); *see also Pearson's Pharmacy, Inc. v. Express Scripts, Inc.*, No. 3:06-cv-73, 2007 WL 1655993, at *5 (M.D. Ala. June 7, 2007) (dismissing action because, among other reasons, fraud by silence could not be claimed in the absence of a duty to disclose).[9]

---

factual allegations that would support an inference that the defendant had participated in a scheme to defraud." *Ault*, 597 N.E.2d at 723. Further, in recognizing that "[p]romissory fraud is a disfavored cause of action in Illinois because fraud is easy to allege and difficult to prove or disprove[,]" the Seventh Circuit in *Bower v. Jones*, 978 F. 2d 1004 (7th Cir. 1992), stated:

> Thus, the burden on a plaintiff claiming promissory fraud is deliberately high. In order to survive the pleading stage, a claimant must be able to point to specific, objective manifestations of fraudulent intent – a scheme or device. If he cannot, it is in effect presumed that he cannot prove facts at trial entitling him to relief. ***If the rule were otherwise, anyone with a breach of contract claim could open the door to tort damages by alleging that the promises broken were never intended to be performed. Presumably, it is this result that the Illinois rule seeks to avoid.*** (emphasis added).

[9] A copy of the *Pearson's Pharmacy* case, similar to the instant case, is attached hereto as Exhibit 1. Therein, the Middle District of Alabama granted the defendant's motion to dismiss on the same grounds as those set forth by the Caremark Defendants herein.

13

Here, Mill Street does not even attempt to establish the existence of a "special relationship" – let alone make a sufficient showing – instead merely asserting that Caremark L.L.C. owed it a duty to disclose certain information because of the parties' contractual relationship. (*See* Am. Cmplt. ¶¶ 47, 49, 51-52)  However, Illinois law is clear that a mere arms-length business relationship does not suffice to establish the existence of a "special relationship". *See Lefebvre Intergraphics, Inc.*, 946 F. Supp. at 1367.  Accordingly, this Court should dismiss Count II.

Further, even if Plaintiff were permitted to recast its contract claim as one for fraudulent misrepresentation (which it is not), such claim still must be dismissed as it falls well-short of satisfying the heightened pleading requirements for fraud-based claims.  As already noted, Rule 9(b)[10] requires a plaintiff to plead all elements of fraud with particularity.  Mill Street's fraud claim here does not meet that fundamental pleading requirement.  To the contrary, Mill Street simply labels Caremark L.L.C.'s conduct as "fraudulent" several times.  (Am. Cmplt. ¶¶ 1, 12, 30, 33-34).  But, as already established, legal conclusions will not satisfy any pleading regime, much less Rule 9(b).  *Perkins*, 939 F.2d at 467.  The Amended Complaint plainly lacks the indispensable "who, what, when and where" of the alleged fraud.  *See DiLeo*, 901 F.2d at 627.  There are no factual details regarding <u>who</u> from Caremark L.L.C. said or represented <u>what</u> and <u>when</u> and <u>where</u> any such representations were made.  *See Siegel*, 159 F. Supp. 2d at 1125 ("[A]llegations 'that fail to specify the time, place, speaker and content of the alleged misrepresentations lack the 'particulars' required by Rule 9(b).'").  Accordingly, Plaintiff's claim must be dismissed.

---

[10] Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

CHIC_2149844.1

Finally, Mill Street's fraud allegations read in their entirety make clear that Plaintiff is impermissibly attempting to couch its breach of contract claim as one for fraud. This is directly contrary to well-established law and requires the dismissal of this claim. *See id.* at 1127 n. 2 (holding where allegedly misleading statements were made in the parties' agreement, the proper claim was for breach of contract and not fraud). For these reasons as well, Count II of the Amended Complaint should be dismissed.

### D.    Mill Street Fails To State A Valid Claim Under The Illinois Consumer Fraud And Deceptive Business Practices Act

#### 1.    A Consumer Fraud Act Claim Cannot Be Based Solely On Breach of Contractual Promises

The Illinois Supreme Court has clarified the scope of the Consumer Fraud Act and has made clear that the Act cannot be used to turn contract claims into consumer fraud actions. In *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 2005), the plaintiff insureds brought a Consumer Fraud Act claim against an automobile insurer, alleging that the insurer violated the Act by installing inferior automobile parts despite having promised to use parts of like kind and quality. The Supreme Court held that no Consumer Fraud Act claim exists where the conduct alleged consists solely of broken contractual promises:

> Were our courts to accept plaintiff's assertion that promises that go unfulfilled are actionable under the Consumer Fraud Act, consumer plaintiffs could convert any suit for breach of contract into a consumer fraud action. However, it is settled that the Consumer Fraud Act was not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy. We believe that a 'deceptive act or practice' involves more than the mere fact that a defendant promised something and then failed to do it.

*Id.* at 844 (emphasis added; internal citations omitted).

Just as in *Avery*, Plaintiff alleges precisely the same allegations in support of its Consumer Fraud Act claim as it made in support of its breach of contract claim. In other words,

15

Plaintiff alleges <u>no conduct other than its alleged contractual breaches</u> as the basis for its claim under the Act. Plaintiff merely claims (though not very well) that Caremark, L.L.C. promised something and then failed to do it.

The Illinois Supreme Court's decision in *Avery* mandates that Plaintiff's Consumer Fraud Act claim must fail. Indeed, to do otherwise, will bring to fruition the Supreme Court's very warning that every breach of contract claim could spawn a redundant Consumer Fraud Act claim.

**2.　　Even If Plaintiff Had An Independent Basis For A Consumer Fraud Act Claim, Which It Does Not, <u>Plaintiff Is Not A "Consumer" As Required By The Act</u>**

Moreover, Mill Street is plainly not a "consumer" within the meaning of the Act. As its title suggests, the Illinois "*Consumer* Fraud And Deceptive Business Practices Act" was enacted to protect consumers, and to that end, "consumer" is defined as "any person who purchases or contracts for the purchase of merchandise *not for resale in the ordinary course of his trade or business but for his use or that of a member of his household*." 815 ILCS 505/1 (emphasis added). Here, it is clear that Mill Street was not a consumer, but rather was a for-profit business. As this Court has repeatedly recognized, "[i]t is clear that the [Act] is primarily concerned with protecting consumers, not business entities." *JMR Sales, Inc. v. MMC Elec. Am., Inc.*, 2002 U.S. Dist. LEXIS 19285, at *8 (N.D. Ill. Oct. 10, 2002) (citing *Web Comm. Group, Inc. v. Gateway 2000, Inc.*, 889 F. Supp. 316, 323 (N.D. Ill. 1995)). Here, Plaintiff plainly is not the sort of "consumer" contemplated by the Act.

**3.　　<u>Plaintiff Has Not Alleged Any "Consumer Nexus"</u>**

Mill Street has also failed to plead the requisite general "consumer protection concerns," and that such concerns are implicated by Caremark L.L.C.'s purported misconduct. Courts have ruled under such circumstances that dismissal of a Consumer Fraud Act claim is

16

appropriate.  *See*, *e.g.*, *Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436 (7th Cir. 1996) (upholding dismissal of Consumer Fraud Act claim because nothing in claim "comply with the requirements that these trade practices be directed to the market generally or implicate consumer protection concerns").  The Act was not designed to apply to specific transactions between businesses – particularly businesses of a certain level of sophistication such as Caremark L.L.C. and Mill Street, both of which freely negotiated and entered into a contract that governed their relationship.  *Lake County Grading Co. of Libertyville, Inc. v. Advance Mech. Contractors, Inc.*, 654 N.E.2d 1109, 1115-16 (Ill. App. Ct. 1995) (stating that the Consumer Fraud Act was "not intended to cover all commercial transactions regardless of the relationship between the parties involved").  Nor was the Consumer Fraud Act intended to burden the court system by turning every breach of contract action into a redundant Consumer Fraud Act claim. *See Pressalite Corp. v. Matsushita Elec. Corp. of Am.*, No. 02 C 7086, 2003 WL 1811530, at *10 (N.D. Ill. Apr. 4, 2003) (finding no consumer protection concerns where defendants allegedly defrauded plaintiffs within their *particular* business relationship, as opposed to the consumer public at large). For these reasons, this Court should dismiss Mill Street's Consumer Fraud Act claim accordingly for failure to state a claim upon which relief can be granted.

> ### 4.    Plaintiff Fails To Plead Consumer
> ### Fraud Act Claim With Particularity

Finally, as with its other fraud-based claims, Mill Street has not pled the elements of its Consumer Fraud Act claim with the heightened specificity as demanded by Rule 9(b).  *See*, *e.g.*, *Gallagher Corp. v. Mass. Mut. Life Ins. Co.*, 940 F. Supp. 176, 180 (N.D. Ill. 1996); *Connick v. Suzuki Motor Co.,* 675 N.E.2d 584 (Ill. 1996).  Again, bare legal conclusions will not survive dismissal.  *Id.*

CHIC_2149844.1

Mill Street's conclusory, naked allegations in connection with its Consumer Fraud Act claim make clear that it has not carried its heavy burden as to <u>any</u> of the elements of the claim. Instead, Mill Street parrots the same type of general allegations that it set forth in support of its breach of contract claims. (*See, e.g.*, Am. Cmplt. ¶ 61 ("[b]y means of the actions alleged above, Defendants have misrepresented, concealed, suppressed and/or omitted material facts with the intent that others rely thereon in the conduct of trade or commerce"); *Id.* ¶ 62 ("[t]he conduct of Defendants as alleged herein constitutes the use or employment of deception, fraud, false pretense, false promise, misrepresentation and the concealment, suppression or omission within the meaning of the [Consumer Fraud Act] and the *Illinois Uniform Deceptive Trade Practices Act* 815 ILCS 510/2, and the applicable similar state law consumer protection statutes of the various states"); *Id.* ¶ 65 ("Defendants have knowingly, intentionally, willfully and deliberately misrepresented, concealed, suppressed and/or omitted material facts with the intent that Plaintiff and the class rely on the misrepresentations, concealments, suppressions and/or omissions.").

Such vague and conclusory allegations plainly do not satisfy the heightened pleading standard of Rule 9(b) and Plaintiff's claim should therefore be dismissed.

### E.    The Illinois Uniform Deceptive Trade Practices Act ("UDTPA") Is Inapplicable Under Any Logical Interpretation Of That Act

Mill Street attempts to bootstrap to its Consumer Fraud Act claim a purportedly separate claim under the UDTPA. However, even a cursory review of the UDTPA reveals that it was intended to address specific types of conduct – such as trademark infringement – that are not even at issue in this case. The "Prefatory Note Of National Conference Of Commissioners On Uniform State Laws" incorporated into the Illinois statute states, among other things, that "[d]eceptive conduct constituting unreasonable interference with another's promotion and

18

conduct of business is part of a heterogeneous collection of legal wrongs known as 'unfair trade practices.'" 815 ILCS 510. The note continues, "[t]he tort action for deceptive trade practices or 'passing off' developed from the common-law action for trademark infringement . . . [and] [t]he deceptive trade practices singled out by the Uniform Act can be roughly subdivided into conduct involving either misleading trade identification or false or deceptive advertising." *Id.*

815 ILCS 510/2 lists twelve (12) acts constituting deceptive trade practice. Yet, the Court need not look past the first several before getting a sense for the type of conduct prohibited by the UDTPA, conduct that is not conceivably a part of this lawsuit. 815 ILCS 510/2 begins, "[a] person engages in a deceptive trade practice when, in the course of his business, vocation or occupation, he:

> (1) passes off goods or services as those of another;
>
> (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;
>
> (3) causes likelihood of confusion or of misunderstanding as to affiliation, connection or association with or certification by another;

815 ILCS 510/2(1)-(3). Case law interpreting the UDPTA reflects the same subject matter – that is, either trademark infringement or other acts, representations or advertisements that would confuse the consuming public as to the source of a product or service or constitute deceptive trade practices. *See Labor Ready, Inc. v. Williams Staffing, LLC*, 149 F. Supp. 2d 398, 413 (N.D. Ill. 2001) ("[P]laintiff must allege that defendants publicized untrue or misleading statements that disparaged plaintiff's goods or services."). As with the Consumer Fraud Act, the Illinois General Assembly did not intend to transform every breach of contract action between two commercial entities into a claim under the UDTPA. As the Court in *Lake County*, 654 N.E.2d at 1116 stated:

19

Courts continue to adhere to the rule that "every individual breach of contract between two parties does not amount to a cause of action under the Act." Indeed, if litigants could invoke the Act merely by alleging an intentional or fraudulent breach of a contract, common-law breach of contract actions would be supplemented in every case with an additional and redundant remedy under the Act. This could not have been the legislature's intent." (citations omitted).

Therefore, Mill Street's Uniform Deceptive Trade Practices Act claim should also be dismissed for failure to state a claim upon which relief can be granted.

### F.    Plaintiff's Unjust Enrichment Claim Must Be Dismissed, Because A Valid Contract Exists Between The Parties

Plaintiff cannot assert a valid claim for unjust enrichment, because it has a valid legally enforceable contract with Caremark, L.L.C.

It is hornbook law that a plaintiff cannot recover on a claim for unjust enrichment where there is an express, legally enforceable contract between the disputing parties. *See Hartigan v. E & E Hauling, Inc.*, 153 Ill. 2d 473, 496-97 (1992) (affirming dismissal of unjust enrichment claim, noting that "[b]ecause unjust enrichment is based on an implied contract, 'where there is a specific contract which governs the relationship of the parties, the [equitable] doctrine of unjust enrichment has no application.'") (quotation omitted).

Here, Plaintiff relies on the contract between the parties to support its breach of contract claims and has not alleged any additional facts to support the unjust enrichment claim. As such, the unjust enrichment claim should be dismissed in its entirety.

### G.    Even Were Mill Street's Claims Viable, The Majority Would Be Time-Barred

Mill Street is pursuing Caremark, L.L.C. on the following theories:  (a) breach of contract, (b) fraudulent misrepresentation and concealment, (c) violation of the Consumer Fraud Act and UDTPA and (d) unjust enrichment.  Illinois law applies a 10-year statute of limitation on

20

claims for breach of a written contract. 735 ILCS 5/13-206. Fraudulent misrepresentation and concealment claims are governed by a five (5)-year limitations period. 735 ILCS 5/13-205. A plaintiff has three (3) years to file a Consumer Fraud Act claim. 815 ILCS 505/10a(e). Finally, unjust enrichment claims must be filed within five (5) years of accrual. 735 ILCS 5/13-205.

A plaintiff's cause of action accrues on the date when he knew or should have known that a cause of action existed through the exercise of reasonable diligence. *Team Play, Inc. v. Boyer*, 391 F. Supp. 2d 695, 706-07 (N.D. Ill. 2005) (noting that a "plaintiff is deemed to know that his injury is wrongfully caused when he becomes possessed of sufficient information to put reasonable person on inquiry to determine whether actionable conduct is involved").

Here, Mill Street alleges that Caremark L.L.C. reimbursed Mill Street at a rate – calculated based on the AWP of a prescription drug – lower than that required by the contracts at issue. Plaintiff also alleges that Caremark L.L.C. reimbursed it later than required by the contract, thereby allowing it to generate a profit on "the float." However, Mill Street effectively states in the Amended Complaint that it knew or reasonably should have known at all times what the AWP value was that would have controlled the reimbursement rate. Paragraph 32 of the Amended Complaint provides in pertinent part that:

> AWP is the average of the prices charged by national drug wholesalers for a given prescription drug. *AWP is electronically updated by the manufacturer or distributor of the medication on a current or correct basis.Accordingly, AWP is readily ascertainable and easily definable.* **AWP is reported to pharmacies, insurance companies, pharmacy benefit managers and the public by third-party publications such as Red Book, Blue Book and Medispan.**
> (emphasis added).

Clearly then, Mill Street, as a pharmacy, admittedly had access to the "correct" AWP at all times and, through a simple calculation, could ascertain whether Caremark L.L.C. was compensating it correctly under the terms of their contract. This readily available

21

information, which by Mill Street's own admission is *reported* to pharmacies, was sufficient to put a reasonable person on inquiry to determine whether actionable conduct was involved in Caremark L.L.C.'s performance of the contract.  Based on its own allegations in the Amended Complaint, it is clear that Mill Street would have known – or reasonably should have known – if Caremark L.L.C. was not submitting payments under the parties' contract as required by the contract.  As such, any causes of action Mill Street may have had against Caremark L.L.C. were accruing on an ongoing basis throughout the time period the parties were under contract with each other.  Therefore, even were any of Mill Street's causes of action otherwise viable (which they are not for the reasons set forth above), the majority would be time-barred.  Specifically, as Mill Street's original complaint in this lawsuit was filed on December 26, 2007:

- Any breach of written contract claims based on conduct pre-dating December 26, 1997 are time-barred;

- Any fraudulent concealment or misrepresentation claims based on conduct pre-dating December 26, 2002 are time-barred;

- Any Consumer Fraud Act claims based on conduct pre-dating December 26, 2004 are time-barred; and

- Any unjust enrichment claims based on conduct pre-dating December 26, 2002 are time-barred.

## <u>CONCLUSION</u>

For the above reasons, the Caremark Defendants respectfully request that this Court grant their motion to dismiss for improper venue or, alternatively, transfer this action to the Eastern Division of the Northern District of Illinois.  In the further alternative, the Caremark Defendants request that this Court dismiss this action pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, and order such other and further relief as this Court deems just and proper.

CHIC_2149844.1

Dated:  March 7, 2008

Respectfully submitted,

CAREMARK RX, L.L.C., CAREMARK
L.L.C. AND CVS CAREMARK
CORPORATION


/s/ Daniel M. Cordis
One of Their Attorneys

Frank E. Pasquesi (IL Bar No. 6205455)
Robert H. Griffith (IL Bar No. 6237224)
Daniel M. Cordis (IL Bar No. 6285963)
Foley & Lardner LLP
321 North Clark Street
Suite 2800
Chicago, Illinois  60610
312.832.4500 (t)
312.832.4700 (f)

23

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | |
|---|---|
| MILL STREET CLINIC PHARMACY, INC., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CAREMARK RX, L.L.C., CAREMARK RX, INC., CAREMARK, INC., CAREMARK, L.L.C., AND CVS CAREMARK CORPORATION,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Case No. 07 C 50249<br><br>The Honorable Philip G. Reinhard |

### NOTIFICATION OF AFFILIATES - DISCLOSURE STATEMENT

Pursuant to Fed. R. Civ. P. 7.1 and Local Rule 3.2, Defendants Caremark, L.L.C., f/k/a Caremark Inc., and Caremark Rx, L.L.C., f/k/a Caremark Rx, Inc., by their attorneys, state as follows:

1.    Defendant Caremark, L.L.C. (formerly known as Caremark Inc., and incorrectly sued as "Caremark, Inc.") is a wholly-owned subsidiary of Caremark International, L.L.C., which is a wholly-owned subsidiary of Caremark Rx, L.L.C. (formerly known as Caremark Rx, Inc.)[1], which is a wholly-owned subsidiary of CVS Pharmacy, Inc.  CVS Caremark Corporation, a publicly held corporation, owns 100% of CVS Pharmacy, Inc.'s stock.

---

[1] In connection with a March 2007 merger between Caremark Rx, Inc. and CVS Corporation ("CVS"), Caremark Rx, Inc. was merged into a subsidiary of the re-named parent company, CVS Caremark Corporation.  The surviving entity and successor to Caremark Rx, Inc. following the merger is Caremark Rx, L.L.C.

2.      Neither Defendant has any parent company, subsidiary or affiliate that has

issued shares to the public other than CVS Caremark Corporation.

Dated:  March 7, 2008                    Respectfully Submitted,

                                         CAREMARK Rx, L.L.C., CAREMARK
                                         L.L.C. AND CVS CAREMARK
                                         CORPORATION


                                         By:/s/ Daniel M. Cordis
                                                 One of Their Attorneys

Frank E. Pasquesi (IL Bar No. 6205455)
Robert H. Griffith (IL Bar No. 6237224)
Daniel M. Cordis (IL Bar No. 6285963)
Foley & Lardner LLP
321 North Clark Street
Suite 2800
Chicago, IL  60610
312.832.4500 (Telephone)
312.832.4700 (Facsimile)

2

# Exhibit 1

CHIC_2149844.1

Westlaw.

505 F.Supp.2d 1272
505 F.Supp.2d 1272
**(Cite as: 505 F.Supp.2d 1272)**

Page 1

**C** Pearson's Pharmacy, Inc. v. Express Scripts, Inc.
M.D.Ala.,2007.

United States District Court,M.D. Alabama,Eastern
Division.
PEARSON'S PHARMACY, INC., et al., Plaintiffs,
v.
EXPRESS SCRIPTS, INC., Defendant.
**No. 3:06-cv-73-WKW.**

June 7, 2007.

**Background:** Pharmacies brought action against
pharmacy benefit management company alleging
fraud, breach of contract, unjust enrichment, and the
need for injunctive relief. Defendant moved to
dismiss.

**Holdings:** The District Court, Watkins, J., held
that:

(1) company's alleged written misrepresentation
was not actionable as fraud;

(2) pharmacies failed to state claim for
fraudulent suppression; and

(3) unjust enrichment and constructive trust
claims were precluded by an adequate contract
remedy.

Motion to dismiss granted.

West Headnotes

**[1] Federal Civil Procedure 170A** ⚷673

170A Federal Civil Procedure
  170AVII Pleadings and Motions
    170AVII(B) Complaint
      170AVII(B)1 In General
        170Ak673 k. Claim for Relief in
General. Most Cited Cases

**Federal Civil Procedure 170A** ⚷1772

170A Federal Civil Procedure
  170AXI Dismissal
    170AXI(B) Involuntary Dismissal
      170AXI(B)3 Pleading, Defects In, in
General
        170Ak1772 k. Insufficiency in General.
Most Cited Cases
On a motion to dismiss for failure to state a claim, a
complaint requires more than labels and conclusions,
and a formulaic recitation of the elements of a cause
of action will not do. Fed.Rules Civ.Proc.Rule
12(b)(6), 28 U.S.C.A.

**[2] Federal Civil Procedure 170A** ⚷673

170A Federal Civil Procedure
  170AVII Pleadings and Motions
    170AVII(B) Complaint
      170AVII(B)1 In General
        170Ak673 k. Claim for Relief in
General. Most Cited Cases

**Federal Civil Procedure 170A** ⚷1772

170A Federal Civil Procedure
  170AXI Dismissal
    170AXI(B) Involuntary Dismissal
      170AXI(B)3 Pleading, Defects In, in
General
        170Ak1772 k. Insufficiency in General.
Most Cited Cases
On a motion to dismiss for failure to state a claim, the
court does not require heightened fact pleading of
specifics, but only enough facts to state a claim to
relief that is plausible on its face. Fed.Rules
Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[3] Fraud 184** ⚷3

184 Fraud
  184I Deception Constituting Fraud, and Liability
Therefor
    184k2 Elements of Actual Fraud
      184k3 k. In General. Most Cited Cases
Under Alabama law, the elements of fraud are (1) a
misrepresentation of a material fact, (2) made
willfully to deceive, recklessly, without knowledge,

505 F.Supp.2d 1272
505 F.Supp.2d 1272
**(Cite as: 505 F.Supp.2d 1272)**

or mistakenly, (3) that was reasonably relied on by the plaintiff under the circumstances, and (4) that caused damage as a proximate consequence.

**[4] Fraud 184 ⚷32**

184 Fraud
    184II Actions
        184II(A) Rights of Action and Defenses
        184k32 k. Effect of Existence of Remedy by Action on Contract. Most Cited Cases
Under Alabama law, a mere breach of a contractual provision is not sufficient to support a charge of fraud.

**[5] Fraud 184 ⚷32**

184 Fraud
    184II Actions
        184II(A) Rights of Action and Defenses
        184k32 k. Effect of Existence of Remedy by Action on Contract. Most Cited Cases
Pharmacy benefit management company's alleged written misrepresentation on the face of contract with pharmacies as to its failure to pay the "Average Wholesale Price" (AWP) for prescription medications as represented in the contract, without more, was not actionable as fraud under Alabama law; rather, the situation represented a breach of contract claim.

**[6] Fraud 184 ⚷17**

184 Fraud
    184I Deception Constituting Fraud, and Liability Therefor
        184k15 Fraudulent Concealment
        184k17 k. Duty to Disclose Facts. Most Cited Cases
Under Alabama law, the suppression of a material fact which the party is under an obligation to communicate constitutes fraud. Ala.Code 1975, § 6-5-102.

**[7] Fraud 184 ⚷16**

184 Fraud
    184I Deception Constituting Fraud, and Liability Therefor
        184k15 Fraudulent Concealment

184k16 k. In General. Most Cited Cases
To state a claim of fraudulent suppression under Alabama law, plaintiff must establish (1) that defendant had a duty to disclose material existing fact; (2) that defendant suppressed material fact; (3) that defendant's suppression of material fact induced plaintiff to act or to refrain from acting; and (4) that plaintiff suffered actual damage as a proximate result. Ala.Code 1975, § 6-5-102.

**[8] Fraud 184 ⚷17**

184 Fraud
    184I Deception Constituting Fraud, and Liability Therefor
        184k15 Fraudulent Concealment
        184k17 k. Duty to Disclose Facts. Most Cited Cases
Under Alabama law, without a duty to disclose, there can be no recovery for fraudulent suppression. Ala.Code 1975, § 6-5-102.

**[9] Fraud 184 ⚷17**

184 Fraud
    184I Deception Constituting Fraud, and Liability Therefor
        184k15 Fraudulent Concealment
        184k17 k. Duty to Disclose Facts. Most Cited Cases
A duty to speak, for purposes of a fraudulent suppression claim under Alabama law, depends on the relation of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances. Ala.Code 1975, § 6-5-102.

**[10] Fraud 184 ⚷17**

184 Fraud
    184I Deception Constituting Fraud, and Liability Therefor
        184k15 Fraudulent Concealment
        184k17 k. Duty to Disclose Facts. Most Cited Cases
Under Alabama law, when the parties to a transaction deal with each other at arm's length, with no confidential relationship, no obligation to disclose information arises when the information is not requested, for purposes of a fraudulent suppression claim. Ala.Code 1975, § 6-5-102.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**[11] Fraud 184 🔑17**

184 Fraud
   184I Deception Constituting Fraud, and Liability Therefor
      184k15 Fraudulent Concealment
         184k17 k. Duty to Disclose Facts. Most Cited Cases

Pharmacies failed to allege that a confidential or special relationship existed with pharmacy benefit management company that would have given rise to a duty to disclose on behalf of company, or that pharmacies had directly asked defendant company a question, the answer to which the company misrepresented, as required to state fraudulent suppression claim against the company under Alabama law. Ala.Code 1975, § 6-5-102.

**[12] Implied and Constructive Contracts 205H 🔑55**

205H Implied and Constructive Contracts
   205HI Nature and Grounds of Obligation
      205HI(D) Effect of Express Contract
      205Hk55 k. In General. Most Cited Cases

**Trusts 390 🔑91**

390 Trusts
   390I Creation, Existence, and Validity
      390I(C) Constructive Trusts
         390k91 k. Nature of Constructive Trust. Most Cited Cases

Pharmacies' unjust enrichment and constructive trust claims against pharmacy benefit management company was precluded, under Alabama law, by the pharmacies adequate remedy at law for damages under a theory of breach of contract.

**[13] Trusts 390 🔑91**

390 Trusts
   390I Creation, Existence, and Validity
      390I(C) Constructive Trusts
         390k91 k. Nature of Constructive Trust. Most Cited Cases

Under Alabama law, a constructive trust is a creature of equity.

**[14] Trusts 390 🔑91**

390 Trusts
   390I Creation, Existence, and Validity
      390I(C) Constructive Trusts
         390k91 k. Nature of Constructive Trust. Most Cited Cases

**Trusts 390 🔑94.5**

390 Trusts
   390I Creation, Existence, and Validity
      390I(C) Constructive Trusts
         390k94.5 k. Fraud in General. Most Cited Cases

A constructive trust will be found under Alabama law when property has been either acquired by fraud, or where in the absence of fraud it would not be equitable to allow it to be retained by him who holds it.

**[15] Trusts 390 🔑91**

390 Trusts
   390I Creation, Existence, and Validity
      390I(C) Constructive Trusts
         390k91 k. Nature of Constructive Trust. Most Cited Cases

Under Alabama law, presence of an adequate remedy at law precludes the enforcement of a constructive trust.

**\*1273** James Michael Terrell, Robert G. Methvin, Jr., McCallum Methvin & Terrell PC, Kenneth Evan Riley, Farris, Riley & Pitt, LLP, Birmingham, AL, for Plaintiffs.
Christopher Andrew Smith, Christopher John Valeriote, Jeanine R. Bermel, Joseph P. Conran, Thomas Mckee Dee, Husch & Eppenberger, LLC, Clayton, MO, Eric B. Langley, Gregory Carl Cook, Balch & Bingham, Birmingham, AL, for Defendant.

*\*1274MEMORANDUM OPINION AND ORDER*

WATKINS, District Judge.
   Before the court is defendant Express Scripts, Inc.'s ("ESI") Motion to Dismiss (Doc. # 8). For the reasons that follow, defendant's motion is due to be GRANTED.

505 F.Supp.2d 1272                                                                              Page 4
505 F.Supp.2d 1272
**(Cite as: 505 F.Supp.2d 1272)**

### I. FACTS AND PROCEDURAL HISTORY

Pearson's Pharmacy, Inc. ("Pearson's"), and CAM Enterprises, Inc., d/b/a Altadena Pharmacy ("CAM"), brought suit against ESI alleging (1) fraud; (2) breach of contract; (3) unjust enrichment and constructive trust; and (4) the need for injunctive relief. Pearson's and CAM are pharmacies, and ESI is a pharmacy benefit management company. ESI contracts with pharmacies, as a representative of third party payors, to reimburse the cost of prescription medications sold by the pharmacies. At a time unknown, the parties entered into a contract in which ESI would reimburse the plaintiffs for prescription medications based upon an Average Wholesale Price ("AWP").[FN1]

> **FN1.** Plaintiffs have conceded that they do not have the actual contract of the parties; however, they base their contract allegations on the allegedly similar language of contracts between ESI and other pharmacies.

"AWP[, according to plaintiffs,] is the average of the prices charged by national drug wholesalers for a given prescription drug." (Am.Compl.¶ 9.) Plaintiffs contend that AWP is "readily ascertainable and easily definable .... [having been published in] Red Book, Blue Book and Medispan," as well as being reported to all interested parties. *Id.* The bottom line of plaintiffs' breach of contract allegation is that ESI "deliberately refuses to fully reimburse [them] at AWP according to the terms of the contract."*Id.* Plaintiffs also allege that ESI never intended to abide by the contract, intentionally misled plaintiffs as to the purpose of the program, and was under a duty not to misrepresent the program. Further, plaintiffs allege that they entered into the contract with the defendant based upon a misrepresentation by the defendant as to the pricing formula for AWP. Plaintiffs attempt to articulate the fraudulent misrepresentations and/or suppressions, both written and oral, in the following language of their complaint:

   a. that Defendant would not fully, timely and properly reimburse Plaintiffs;

   b. that Defendant would not reimburse Plaintiffs and putative class members according to the Average Wholesale Price (suppression);

   c. that Defendant would reimburse Plaintiffs and putative class members according to the Average Wholesale Price (misrepresentation);

   d. By suppressing and/or misrepresenting the facts alleged herein which constitutes engaging in a pattern and practice of untruthful statements, false representations, concealment, and intent to mislead in its contractual agreements;

   e. By failing to disclose that Defendant either did not have access to or would not reimburse Plaintiffs and putative class members based upon the daily Average Wholesale Price;

   f. By failing to disclose the method upon which Defendant would determine the Average Wholesale Price of a brand name prescription medication;

   g. By failing to send Plaintiffs and other pharmacies enough information to make an informed decision regarding Defendant'[s] AWP reimbursement program;

   **\*1275** h. By charging Plaintiffs an unconscionable fee and engaging in unconscionable practices.

(*Id.* ¶ 16.)

The court held oral argument on defendant's motion to dismiss count I (fraud) and count III (unjust enrichment and constructive trust). During argument, plaintiffs conceded that their claims for injunctive relief and oral misrepresentation are to be dismissed without prejudice. Further, plaintiffs clarified their position that they are merely alleging a written misrepresentation in the contract as the *only* basis for their fraud and suppression claims. The defendants argued that, at best, plaintiffs can maintain only promissory fraud, rather than fraud arising from a term within the contract. The parties have fully briefed their respective positions on the instant motion.

### II. STANDARD OF REVIEW

[1][2] A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly, --- U.S. ----, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)* (citation omitted). Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level ...

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

on the assumption that all the allegations in the complaint are true" (even if doubtful in fact). *Id. at 1964-65* (citations omitted); *see also Hill v. White, 321 F.3d 1334 (11th Cir.2003)* (stating that the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff). The court does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl., 127 S.Ct. at 1974*.

### III. DISCUSSION

Defendant moves for dismissal as to the plaintiffs' fraud, suppression, and unjust enrichment and constructive trust claims. The court will address the issues in turn. First, with respect to plaintiffs' claim of fraud, the ultimate issue for consideration is whether a written misrepresentation in a contract can give rise to fraud under Alabama law. The court finds that, in this situation, it does not. Second, the defendant did not owe a duty to disclose relevant facts to plaintiffs, which leaves plaintiffs' suppression allegation without merit. Third, plaintiffs have a valid remedy at law for any alleged breach of contract requiring the dismissal of plaintiffs' unjust enrichment and constructive trust claim.

#### A. Fraudulent Misrepresentations

During oral argument on defendant's motion to dismiss, plaintiffs clarified to the court that the only misrepresentation they can point to with specificity is the allegedly ambiguous meaning of the term "AWP" in the contract. Defendant responds that fraud cannot arise solely out of a written misrepresentation in a contract and that, at best, plaintiffs are left with promissory fraud. The plaintiffs insist that they are not alleging promissory fraud. (Hr'g Tr. 37:3-4.) The court agrees with the defendant that an alleged written misrepresentation in a contract, without more, cannot be actionable as fraud in Alabama.

[3][4] "The elements of fraud are (1) a misrepresentation of a material fact, (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) that was reasonably relied on by the plaintiff under the circumstances, and (4) that caused damage as a proximate consequence." *1276Allstate Ins. Co. v. Eskridge, 823 So.2d 1254, 1258 (Ala.2001)* (citation omitted). "A mere breach

of a contractual provision is not sufficient to support a charge of fraud." *Brown-Marx Assoc., Ltd. v. Emigrant Sav. Bank, 703 F.2d 1361, 1370-1371 (11th Cir.1983)* (citing *McAdory v. Jones, 260 Ala. 547, 71 So.2d 526, 528 (1954)); see also Hunt Petroleum Corp. v. State, 901 So.2d 1, 10 (Ala.2004)* (Houston, J., concurring) (explaining that "to assert a fraud claim that stems from the same general facts as one's breach-of-contract claim, the fraud claim must be based on representations independent from the promises in the contract and must independently satisfy the elements of fraud.")

[5] Under Alabama law, the plaintiffs must aver that there were either oral or written misrepresentations made before the signing of the contract or during the performance of the contract. Plaintiffs cannot convert a typical breach of contract into a fraud action without satisfying the elements of both actions. As noted, plaintiffs have admitted that the only misrepresentation that they can point to with specificity is the ambiguous meaning of the term AWP as used in the contract. Specifically, the plaintiffs allege that "it says in the contract [defendant] will pay [plaintiffs] AWP, and [defendant] [didn't] pay AWP."(H'rg Tr. 18:24-25.) Further, it is alleged that "[the defendant has] misrepresented what they're going to pay [the plaintiffs]". (*Id.* 20:10-11.) In essence, the plaintiffs' fraud claim is that, although the contract requires the defendant to reimburse plaintiffs according to AWP, the defendant has not paid AWP as defined by the plaintiffs. This dispute boils down to the interpretation of an undefined or ambiguous contract term.

Plaintiffs cite two cases in support of their fraud claim. However, those cases are inapposite to these facts. *See Deupree v. Butner, 522 So.2d 242 (Ala.1988); National Sec. Fire & Cas., Inc. v. Vintson, 414 So.2d 49 (Ala.1982)*. In *Deupree,* the plaintiffs purchased a Florida townhouse from a developer under a contract that required the developer to build a boat slip. A boat slip required a submerged land lease, but the developer ran into various problems obtaining one. A public hearing was scheduled prior to the closing, but the developer asked that his application for the lease be put on hold. The developer then continued to build the boat slip while informing the Florida Department of Natural Resources ("DNR") that the slip was being built by

505 F.Supp.2d 1272
505 F.Supp.2d 1272
**(Cite as: 505 F.Supp.2d 1272)**

the purchasers. He told the purchasers a different story-that there would be no problem in securing permission for the boat slip, a representation that was false.

The purchasers sued the developer for breach of contract and fraud. The Alabama Supreme Court held that there were "fraudulent concealments *after* the contract was made, and that the facts of [the case] could support both a breach of contract claim and a fraud claim." *Deupree, 522 So.2d at 244* (emphasis added).[FN2] The court found that there was evidence that

> FN2. In *Hunt,* Justice Houston commented that *Deupree* was a case about fraud in the inducement rather than fraudulent concealment because the developer induced the purchasers to close on the townhouse. *Hunt, 901 So.2d at 10.*

(1) [the developer] had been informed by DNR that all applications for leases for docks ... were being closely scrutinized; (2) a number of local objections to his application for a submerged land lease had been filed; (3) a public hearing on the application was necessary; (4) he had requested that the application be put "on hold"; and (5) that he had continued to build the boat slips and had told DNR that the construction was being carried on by the townhome owners. **\*1277***Id.* at 245.* This evidence, *independent of the contractual promise,* was proof of fraud by the developer. There is no such evidence alleged in the instant action.

In *Vintson,* an insurance agent made representations to a mobile home resident that the resident had insurance at the moment that he filed the application with the agent. The application was completed and filed, and the initial premium was paid to the agent. A few days later, the mobile home was damaged by fire, and a claim was submitted for fire damage. The insurance company rejected the claim because it had only just received the application and had not yet issued a policy. The resident sued the insurance company for fraud and breach of contract.

The Alabama Supreme Court held that the resident could assert both a fraud and breach of contract action against the insurance company. The

court stated:

We hold that in the narrow situation, such as the one in this case, where the plaintiff claims misrepresentation in the inception of the contract, *i.e.,* where the agent misrepresents the moment in time that the policy will take effect, the plaintiff has the right to present his case to the jury under either a breach of contract theory or the tort of misrepresentation or both, because the same facts could support a finding that the contract did exist, even though the agent misrepresented the time of its inception.

*Vintson, 414 So.2d at 51.* The holding in *Vintson* was a technical question about whether the plaintiff could allege breach of contract when there was a dispute as to the existence of a contract. Even if the jury found a valid contract in *Vintson,* the alleged fraudulent misrepresentation of the agent as to the commencement of the policy was independent of the fire coverage in the contract. Unlike *Vintson,* the plaintiffs in this action have not specifically alleged a written or oral misrepresentation extraneous to the face of the contract. The plaintiffs merely rest on the allegation that there was a provision in the contract that defendant would pay to them AWP, and, because the defendant allegedly breached that provision, then the defendant committed fraud.

This situation is a classic breach of contract claim, rather than a claim for fraudulent misrepresentation. Because an undefined or ambiguous term in a contract, without more, cannot give rise to a claim of fraud, plaintiffs' claim of fraudulent misrepresentation based upon a term in the contract is due to be dismissed with prejudice. Moreover, plaintiffs' claim of an extraneous oral or written fraudulent misrepresentation is dismissed without prejudice in view of the plaintiffs' concession that they failed to plead a misrepresentation with specificity. (*See* H'rg Tr. 34:7-8.)

### B. Fraudulent Suppression

Plaintiffs argue that ESI was under a duty to disclose relevant facts and by misrepresenting these relevant facts, the defendant engaged in suppression. The defendant responds that in a corporate transaction a duty to disclose only arises when a question is asked. The defendant further points out that plaintiffs asked no question in this transaction

that was not answered truthfully.

[6][7][8][9][10] Alabama law provides that "[s]uppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." Ala.Code § 6-5-102 (1975). To state a claim of fraudulent suppression, the plaintiffs must establish "(1) that [ESI] had a duty to disclose [the] material existing fact; (2) that [ESI] suppressed this material fact; *1278 (3) that [ESI's] suppression of this fact induced [them] to act or to refrain from acting; and (4) that [they] suffered actual damage as a proximate result." State Farm Fire & Cas. Co. v. Owen, 729 So.2d 834, 837 (Ala.1998). "[W]ithout a duty to disclose, there can be no recovery for suppression." Freightliner, L.L. C. v. Whatley Contract Carriers, L.L. C., 932 So.2d 883, 891 (Ala.2005). "A duty to speak depends on the relation of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances." Deupree, 522 So.2d at 245. "When the parties to a transaction deal with each other at arm's length, with no confidential relationship, no obligation to disclose information arises when the information is not requested." Mason v. Chrysler Corp., 653 So.2d 951, 954-955 (Ala.1995); see also Freightliner, L.L.C., 932 So.2d at 892 (Ala.2005); Shutter Shop, Inc. v. Amersham Corp., 114 F.Supp.2d 1218, 1225 (M.D.Ala.2000) ("Alabama law presumes that the parties are capable of handling their own affairs and guarding their interests by asking reasonably specific, direct questions that will satisfy their need for information.")

[11] It is undisputed that the parties engaged in a corporate transaction; there is no reason to doubt that, as corporate entities, the parties participated in arm's length negotiations. Plaintiffs did not plead a confidential or special relationship that would give rise to a duty to disclose. Moreover, for plaintiffs to plead with specificity their suppression claim, they must point to a specific question that was directly asked of the defendant, the answer to which the defendant misrepresented. However, the plaintiffs concede that they did not plead with specificity, nor can they at this stage of the proceedings, an oral misrepresentation. Because the plaintiffs concede that there is no oral misrepresentation by the defendant,

the court concludes that there was no direct question asked of the defendant by the plaintiff. For these reasons, the fraudulent suppression claim fails.

### C. Constructive Trust and Unjust Enrichment

Plaintiffs aver that the defendant engaged in "illegal and fraudulent conduct ... [that] has resulted in Defendant obtaining money, which in equity and good conscience, belongs to Plaintiffs." (Am.Compl.¶ 26.) Defendant responds that the plaintiffs' claim for constructive trust and unjust enrichment fails if the court dismisses the count of fraud. The court agrees with the defendant that the constructive trust and unjust enrichment claim should be dismissed.

[12][13][14][15] A constructive trust is a creature of equity. "[A] constructive trust will be found when property has been either acquired by fraud, or where in the absence of fraud it would not be equitable to allow it to be retained by him who holds it." Brothers v. Fuller, 607 So.2d 135, 137 (Ala.1992) (citation and quotation marks omitted). "[A]ctual or intentional fraud is not an essential element of a constructive trust.... A constructive trust may be imposed to prevent unjust enrichment, without regard to actual fraud...." Cole v. Adkins, 358 So.2d 447, 450 (Ala.1978) (citation and quotation marks omitted). However, "the presence of an adequate remedy at law precludes the enforcement of a constructive trust...."See American Family Care, Inc. v. Irwin, 571 So.2d 1053, 1061 (Ala.1990) (citation omitted). The court finds that plaintiffs have an adequate remedy at law for damages under a theory of breach of contract. Therefore, the plaintiffs' unjust enrichment and constructive trust count is due to be DISMISSED with prejudice.

### *1279IV. CONCLUSION

For the reasons set forth above, it is hereby ORDERED that

1. Defendant's Motion to Dismiss (Doc. # 8) is GRANTED;

2. Plaintiffs' claim alleging fraudulent misrepresentation based entirely upon a written misrepresentation in the contract is DISMISSED with prejudice;

3. Plaintiffs' claim alleging fraudulent misrepresentation based upon an extraneous, oral or

505 F.Supp.2d 1272                                                                          Page 8
505 F.Supp.2d 1272
**(Cite as: 505 F.Supp.2d 1272)**

written misrepresentation is DISMISSED WITHOUT
PREJUDICE;

4. Plaintiffs' claim of suppression is
DISMISSED with prejudice; and

5. Plaintiffs' claim for unjust enrichment and
constructive trust is DISMISSED with prejudice.

M.D.Ala.,2007.
Pearson's Pharmacy, Inc. v. Express Scripts, Inc.
505 F.Supp.2d 1272

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## <u>PROOF OF SERVICE</u>

I, Daniel M. Cordis, an-attorney, hereby certify that on March 7, 2008, I caused

the foregoing **Defendants' Memorandum In Support Of Their Motion To Dismiss Pursuant**

**To Rule 12(B)(3) Or, In The Alternative, To Transfer In The Interest Of Justice And**

**Motion To Dismiss Pursuant To Rule 9(B) And 12(B)(6) For Failure To State A Claim** to be

served through the United States District Court for the Northern District Of Illinois (Western

Division)'s ECF system on the following individual:

Peter L. Currie
The Law Firm of Peter L. Currie, P.C.
536 Wing Lane
Saint Charles, Illinois  60174
630.862.1130 (t)
630.845.8983 (f)
plclaw05@aol.com

/s/ Daniel M. Cordis
Daniel M. Cordis

1