**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| MILL STREET CLINIC PHARMACY, INC., )<br>individually and on behalf of all others )<br>similarly situated, )<br>  )<br>　　　　　Plaintiff, )<br>　　vs. )<br>  )<br>CAREMARK RX, L.L.C., CAREMARK RX, )<br>INC., CAREMARK, INC., CAREMARK, )<br>L.L.C., AND CVS CAREMARK )<br>CORPORATION, )<br>  )<br>　　　　　Defendants. | Case No. 07 C 50249<br><br>The Honorable Philip G. Reinhard<br><br>Magistrate Judge P. Michael Mahoney |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT**
**TO RULE 12(B)(3) OR, IN THE ALTERNATIVE, TO TRANSFER IN THE INTEREST**
**OF JUSTICE, OR IN THE FURTHER ALTERNATIVE TO DISMISS**
**PURSUANT TO RULES 9(B) AND 12(B)(6)**

Defendants Caremark Rx, L.L.C. ("Caremark Rx"), Caremark, L.L.C. and CVS Caremark Corporation ("CVS") (collectively, "the Caremark Defendants"), by their attorneys, Foley & Lardner LLP, submit the following reply in further support of their motion to dismiss Plaintiff Mill Street Clinic Pharmacy, Inc.'s ("Mill Street") First Amended Class Action Complaint ("Amended Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(3) or, in the alternative, to transfer pursuant to 28 U.S.C §1406(a) due to improper venue, and in the further alternative to dismiss pursuant to Rules 9(b) and 12(b)(6) for failure to state a claim.

## INTRODUCTION

This Court should dismiss this action pursuant to Rule 12(b)(3) because it is venued improperly in the Western Division and pursuant to Rule 12(b)(6) because each of its four counts fails to state a claim upon which relief can be granted. In terms of venue, Mill Street – a defunct pharmacy no longer in operation – seeks to pursue this case in the Western Division of the Northern District of Illinois ("Western Division") where it now claims (based on a belated, tactical corporate filing made *after* the Caremark Defendants filed their Motion to Dismiss) that a

principal of Mill Street presently resides.[1]  Mill Street's gamesmanship aside, the Western Division can claim no legitimate connection to this lawsuit as all of the contracting and performance activities at the heart of this contract dispute took place in the Eastern Division of the Northern District of Illinois ("Eastern Division").  For these reasons, dismissal is appropriate pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a).  In the alternative, should the Court choose to exercise its discretion and not dismiss, but rather transfer this action pursuant to § 1406(a), it belongs in the Eastern Division.

Regardless of venue, however, Mill Street has failed to state a claim upon which relief can be granted.  First, the parent companies of Caremark L.L.C. (defendants Caremark Rx, L.L.C. and CVS Caremark Corporation) are not even parties to the Participating Pharmacy Agreement with Mill Street, a fact which Mill Street now concedes.  Given that Mill Street fails to provide any independent basis for holding the parent companies liable, instead asserting only conclusory legal allegations about purported alter ego status, Caremark Rx and CVS Caremark Corporation must be dismissed.

Second, Mill Street's vague allegations notwithstanding, it has plainly failed to exhaust its dispute resolution remedies prior to filing suit, requiring this action's dismissal.  Furthermore, it is clear that Mill Street's fraud and fraud-based claims are predicated on a theory of "promissory fraud" (notwithstanding their "fraud in the inducement" label), not recognized under Illinois law.  Just as importantly, Mill Street's fraud claims make no effort to satisfy the particularity and specificity requirements mandated by Rule 9(b) of the Federal Rules of Civil Procedure.  Finally, it is well-established that the Illinois Consumer Fraud Act ("Consumer Fraud Act") and Uniform Deceptive Trade Practices Act ("UDTPA") do not apply to strictly private, commercial, contract disputes between two businesses such as these.

For these reasons, set forth in greater detail below, this Court should dismiss this action for improper venue under Rule 12(b)(3), or alternatively transfer the matter to the Eastern Division pursuant to 28 U.S.C. § 1406(a).  In the further alternative, this Court should dismiss

---

[1] Not only is this new venue theory deficient on its face, but it is made in direct contradiction to the basis for venue pleaded in the Complaint.  *See* Complaint, ¶ 4 (asserting that venue is proper in this Division "because a substantial part of the events or omissions giving rise to the claims occurred" here.)

CHIC_2749534.1

this action pursuant to Rules 9(b) and 12(b)(6) for failure to state a claim upon which relief can be granted.

## ARGUMENT

I.   **Mill Street's Newly-Created "Connection" To The Western Division Cannot Save Its Action From Dismissal Under Rule 12(b)(3) and 28 U.S.C. § 1406(a)**

   A.   *Venue Is Not Proper In The Western Division*

The Caremark Defendants do not dispute that Mill Street's cause of action – were it to state a claim upon which relief could be granted (which it does not) – can be venued properly in the Northern District of Illinois ("Northern District").  However, as previously set forth and as further detailed below, what is equally clear is that venue is not proper in the *Western Division* of the Northern District.

In its response, Mill Street latches on to the general venue statute – 28 U.S.C. § 1391(a) – to argue that, at the *district* level, this lawsuit is properly brought in the Northern District, a proposition with which, as just stated, the Caremark Defendants do not take issue.  Yet, Mill Street ignores the clear terms of the operative statute, 28 U.S.C. § 1406(a),[2] which authorizes dismissal of an action if it is filed "in the wrong *division*" of a district.  (emphasis added)

Here, Mill Street makes no effort to carry its burden of showing that the Western Division is a proper venue in which this case should proceed.  *See Morton Grove Pharm., Inc. v. The Nat'l Pediculosis Ass'n, Inc.*, 485 F. Supp. 2d 944, 947 (N.D. Ill. 2007) ("The plaintiff has the burden to demonstrate that venue is proper . . . .").  Indeed, its own Complaint admits that Mill Street's primary place of business is in Naperville, Illinois, which sits squarely within the *Eastern* Division.  Complaint, ¶ 5.  It further alleges the defendants to be non-residents.  *Id.* at ¶¶ 6-10.  Finally, it failed to set forth a single event or omission relating to its claims that occurred

---

   [2] While the Caremark Defendants seek dismissal or, alternatively, transfer pursuant to 28 U.S.C. § 1406(a), which applies when the lawsuit is improperly venued, Mill Street argues that this action should not be transferred pursuant to 28 U.S.C. § 1404(a), (Resp. at 4-5), which applies only when the plaintiff has brought the action in a proper forum but other factors strongly favor dismissal.  This mistake sheds light on Mill Street's inappropriate citation to inapposite § 1404 cases – *e.g. Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286 (7th Cir. 1989) – to improperly argue that it does not bear the burden of demonstrating that it has properly venued its lawsuit.

CHIC_2749534.1

within this Division.  *See id.*  Thus, Mill Street has failed to carry its burden of establishing venue is proper in this Division.

In fact, Mill Street has done the opposite, backpedaling away from its assertion in the Complaint that, "venue is proper in the [Western Division] because a *substantial* part of the events or omissions giving rise to the claim occurred" here (Am. Cmplt., ¶ 4) (emphasis added), now claiming that "*some* of the events giving rise to this cause of action occurred in this Division."  Resp. at 5 (emphasis added).[3]   However, Mill Street fails to point to a *single such event* that might have occurred here, and fails to point to a shred of evidence or a single fact for this Court to conclude that anything relating to this lawsuit occurred in the Western Division. Accordingly, Mill Street has failed to carry its burden of establishing proper venue and its action must be dismissed.

Finally, it should be noted that Mill Street went out of business and became a defunct corporation in 2002, and has remained so ever since.  Cmplt., ¶ 2.  That is, until *after* the Caremark Defendants filed their Motion to Dismiss in this matter, at which time Mill Street – in a blatant act of gamesmanship – reinstated itself as an Illinois corporation, listing a new address for its agent in Lake Carroll, Illinois, in a transparent, albeit misguided, attempt to keep this lawsuit in this Division.  (Resp., Exhibit 1)  Notably, Mill Street states in its Response that its "limited business" activities consist of "prepar[ing] for this lawsuit and managing its business and records."  (*Id*. at 4)

In other words, any belated, "creative" presence Mill Street might now claim to have in the Western Division has nothing to do with the events or omissions giving rise to its claims. Just as importantly, the mere fact that an individual principal of the Plaintiff's business now claims to reside in the Western Division after Plaintiff Mill Street closed the doors of its business – which Plaintiff admits operated, and took all actions related to the claims at issue, exclusively within the Eastern Division in Naperville, Illinois – is insufficient to support that "some," or even any, of the events giving rise to this lawsuit occurred in the Western Division, or to

---

[3] In making this proposition, Mill Street curiously cites to inapposite case law.  *Cf. Carbonara v. Olmos*, No. 93 C 2626, 1993 WL 473651, at *2 (N.D. Ill. Nov. 15, 1993) (deemphasizing plaintiff's choice of forum where "the cause of action did not conclusively arise in the chosen forum").

4

establish any other basis for venue being here, and the case must accordingly be dismissed for improper venue. *See* 28 U.S.C. § 1391(a).

**B.** ***In The Alternative, The Court Should Transfer This Action In The Interest Of Justice Pursuant To 28 U.S.C. § 1406(a) As Venue Is Improper In The Transferor Court***

In considering whether a transfer (in lieu of dismissal) is appropriate under 28 U.S.C. § 1406(a) and the "interest of justice," courts analyze the following factors: (1) plaintiff's choice of forum; (2) the situs of operative facts; (3) ease of access to proof and potential evidence; (4) convenience to the parties and witnesses; (5) the availability of process; and (6) the cost of attendance and other practical problems. *See Wild v. Subscription Plus, Inc.*, 292 F.3d 526, 530 (7th Cir. 2002); *Carbonara*, 1993 WL 473651 at *2.

First, for the reasons stated above in Section I(A), Mill Street's choice of the Western Division as the forum for this lawsuit is improper. Mill Street has failed to carry its burden to demonstrate that its chosen forum is in fact proper and, in light of its role as proposed plaintiff class representative with the interests of allegedly hundreds or thousands of other potential class members at issue, its self-serving choice of the Western Division is given no weight. *See Carbonara*, 1993 WL 473651 at *1. Moreover, Mill Street's choice of forum is disregarded as the events giving rise to its alleged claims did not occur here. *See id.* at *2. Therefore, the first factor does not favor keeping this litigation in the Western Division.

Second, and as set forth in Defendants' opening Memorandum as well as in Section I(A) above, the situs of the events in question, without exception, is within the Eastern Division. This lawsuit centers around Caremark L.L.C. and its reimbursement of Mill Street on the basis of Average Wholesale Price ("AWP") for prescriptions dispensed. Mill Street admits that it operated exclusively out of the Eastern Division and received its reimbursement payments from Caremark L.L.C. at that location. Mill Street does not attempt – nor could it credibly do so – to identify a single action taken in the Western Division that is associated with its claims in this case.[4] In fact, Mill Street's Response brief entirely omits this critical factor to the transfer

---

[4] Plainly, Mill Street's now-claimed limited business of "preparing for litigation" in the Western Division, approximately six (6) years after it stopped undertaking the business activities in the Eastern Division that give rise to its claims, has no relevance to the "situs of operative facts" factor, and has no bearing on the appropriate venue for this matter.

CHIC_2749534.1

analysis. Simply put, as all of the relevant activity occurred in the Eastern Division – the situs of the events in question – both from the Caremark Defendants' and Mill Street's perspective, *see Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 770, 777 (N.D. Ill. 1998) (transferring case to forum because it "is undoubtedly the forum with more significant contacts to the litigation") (citation omitted), the second factor favors transfer.

The third, fourth and sixth factors of the 1406(a) transfer test largely mirror one another – namely the ease of access to proof and potential evidence, and the convenience to the parties and witnesses. Juxtaposed against the defunct Mill Street is a fully functioning corporation – Caremark, L.L.C. – which, as set forth previously, has its principal place of business in Northbrook, Illinois, squarely within the Eastern Division. Inexplicably, Mill Street claims that the Caremark Defendants' contention that, "Caremark L.L.C.'s documents, employees, witnesses and facilities are all located in the near Chicago suburbs" within miles of the courthouse in the Eastern Division is insufficient to support transfer. However, while Mill Street does not dispute that the Caremark Defendants' witnesses, as well as documents subject to discovery and other evidence, will be located at Caremark, L.L.C.'s offices in Northbrook, Illinois (located in the Eastern Division), it fails to identify a single witness or relevant document located within this Division. Moreover, as the Caremark Defendants' witnesses, documents and other materials greatly outnumber those of Mill Street, a significantly greater burden would be placed on the Caremark Defendants were this action to remain in the Western Division. Accordingly, it is clear that the balance of these factors weighs heavily in favor of transfer to the Eastern Division.[5]

Finally, the interest of justice also favors transfer to the Eastern Division. Mill Street fails to dispute or take issue with the case law cited by the Caremark Defendants that dictates that the interest of justice is "served more efficiently when the action is litigated in the forum that is 'closer to the action.'" *Hanley*, 6 F. Supp. 2d at 777 (citation omitted). That forum indisputably is the Eastern Division, and this case should accordingly be litigated there.

---

[5] The fifth factor in the § 1406(a) analysis, namely the availability of process, is not an issue for purposes of any intra-division transfer within the Northern District.

II.    **All Four Counts Of The Amended Complaint Are Deficient And Fail To State A Claim Upon Which Relief Can Be Granted And Are Otherwise Time-Barred**

     A.    *Mill Street Concedes That It Has Failed To State A Claim Against The Parent Companies Who Were Not Parties To The Contract At Issue*

In its response, Mill Street concedes that it has not stated a claim for breach of contract against Caremark Rx and CVS, the indirect parent companies of Caremark L.L.C., which is the only party to the relevant contract at issue.  (Am. Cmplt., Ex. A)  In hopes of nonetheless keeping the parent companies in the case, Mill Street turns its attention to Counts II, III and IV for fraudulent misrepresentation/concealment, violation of the Consumer Fraud Act and UDTPA and unjust enrichment respectively.  However, even as to those counts (and as previously set forth in Defendants' opening Memorandum), Mill Street has failed to provide any independent basis for holding the parent companies liable, instead asserting only conclusory legal allegations about their purported alter ego status.  (*See* Am. Cmplt., ¶ 11).

Because Mill Street fails to set forth any facts or circumstances that would justify piercing the corporate veil, the claims against the parent company defendants must be dismissed. *See APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir. 2002) (affirming dismissal of defendants where plaintiff failed to provide any basis to pierce the corporate veil where defendants were not parties to the contract from which the claims at issue arose).  Moreover, for the reasons that follow, Mill Street's remaining counts are fatally flawed in any event, further requiring the dismissal of the parent company defendants.

     B.    *Mill Street Fails To State A Claim As It Failed To Satisfy Conditions Precedent To Filing Suit*

Mill Street misconstrues and ignores its contractual obligation to satisfy and comply with its explicit conditions precedent to filing suit, or exhaust its available remedies before filing a formal court action, and its claims must therefore be dismissed in their entirety.  Namely, the Participating Pharmacy Agreement required Mill Street to bring any dispute "to Caremark's attention within sixty (60) days after [Mill Street] receives the disputed payment from Caremark . . . [and that] [a]ny such dispute shall be governed by Caremark's grievance policy as then in effect.". (Am. Cmplt., Ex A, p. 3).  Mill Street's satisfaction of these requirements are conditions

7

precedent to its ability to bring this action.  Further, this Court has dismissed actions (including breach of contract actions) where the plaintiff failed to affirmatively allege it had exhausted all channels of relief prior to filing suit.  *See Pickens-Kane Moving & Storage Co.  v. Int'l Bhd. of Teamsters, Local Union 705*, 98 C 4683, 1999 WL 89649, at *4 (N.D. Ill. Feb. 12, 1999) (dismissing breach of contract action because of plaintiff's failure to exhaust); *Rodriguez v. Roofers Local 11*, No. 03 C 3199, 2003 WL 22176081 (N.D. Ill. Sept. 15, 2003) (granting motion to dismiss where plaintiff made "no allegations" regarding efforts to satisfy exhaustion requirement) (citing *Brown v. Local 107 of the Int'l Bhd. Of Elec. Workers*, 996 F. Supp. 781, 789 (N.D. Ill. 1998) and *Vogel v. Cummins Engine Co., Inc.*, 971 F. Supp. 374, 383 (S.D. Ind. 1997)).[6]

Mill Street's cursory allegation that it "fully performed its obligations under the terms of the contracts" does not satisfy its pre-suit conditions precedent and exhaustion requirements, let alone pass muster under the pleading standards of this Court, and Mill Street's claims must therefore be dismissed.

C.    *Mill Street's Fraudulent Misrepresentation/Concealment Count Is Non-Actionable Under Illinois Law And Lacks The Requisite Pleading Specificity*

Count II of the Amended Complaint (Fraudulent Misrepresentation/Concealment) should be dismissed for several reasons.  First, Mill Street does not question that Illinois does not recognize a cause of action for promissory fraud, where a plaintiff alleges the defendant never intended to abide by its contractual promises.  *See*, *e.g.*, *Ault v. C.C. Servs., Inc.*, 597 N.E.2d 720, 722 (Ill. App. Ct. 1992) (affirming dismissal of fraud because, absent special limited circumstances, fraud cannot be based on misrepresentations in connection with future intentions).  Notwithstanding, Mill Street argues it has a viable fraud-based claim, ignoring the thrust of its fraudulent misrepresentation/concealment allegations in the process, which alleged:

---

[6] *Compare Thompson v. Fairmont Chi. Hotel*, 525 F. Supp. 2d 984, 991-92 (N.D. Ill. 2007) (construing failure as affirmative defense).

8

> Defendants knowingly, intentionally, willfully, recklessly and/or negligently concealed, suppressed and/or omitted the material fact that **it would <u>not</u> fully, properly and timely reimburse Plaintiff for any prescription that Plaintiff filled in accordance with the terms of their contractual agreement**.  (Am. Cmplt. ¶ 47) (emphasis added)

> Specifically, Defendants misrepresented to and/or concealed, suppressed and/or omitted from Plaintiff the following information: . . . **that Defendants would not reimburse Plaintiff and putative class members according to the [AWP]**.  (*Id*., ¶ 49) (emphasis added)

> Defendants further suppressed the fact **that it [sic] would not honor the terms of the parties' contractual agreement concerning timely and proper reimbursement and that they would not fully reimburse Plaintiff for AWP on prescription medication**.  (*Id*., ¶ 52) (emphasis added)

In other words, Mill Street has plainly accused the Caremark Defendants of having no intention of living-up to their contractual agreements in the Participating Pharmacy Agreement, a textbook example of the type of "promissory fraud" claim prohibited by Illinois courts.  *See Ault*, 597 N.E.2d at 722.  Mill Street argues that its fraudulent misrepresentation/concealment claim is really one alleging fraud in the inducement (although Count II is not labeled as such) or plain fraud, claiming that because plaintiff is the "master of its complaint" it can therefore deem that it did not in fact plead the prohibited "promissory fraud" cause of action.  (Resp. at 12)  Surviving a motion to dismiss is not that simple, however, and Mill Street is not entitled to infringe on the province of this Court to determine whether it has stated a viable claim.  Simply put, a plain reading of Count II reflects that it is based upon Mill Street's claim that it entered into the contract with the belief that Caremark L.L.C. would fulfill its contractual obligations, something which Mill Street now claims Caremark L.L.C. did not do.  This is precisely the sort of promissory fraud claim prohibited under Illinois law.

Second, Mill Street relegates the defense of its concealment claim to a footnote, citing *Wright v. Chicago Title Ins. Co.*, 554 N.E.2d 511 (Ill. App. Ct. 1990), to argue that its concealment claim does not fail for lack of a confidential relationship.  Aside from the fact that Mill Street never alleged in its Complaint or otherwise that it has, or ever had, a confidential relationship with Caremark L.L.C., the quotation Mill Street relies on from *Wright* correctly states that, ***there can be no cause of action for concealment or "fraud by silence" in the***

CHIC_2749534.1

*absence of a duty to speak*.  Here, Mill Street makes no effort to establish the existence of such a duty, and completely ignores the authority cited by the Caremark Defendants in their Motion establishing that a simple business relationship such as that which existed here does not give rise to such a duty.  *See Lefebvre Intergraphics, Inc. v. Sanden Mach. Ltd.*, 946 F. Supp. 1358, 1366-68 (noting that, under Illinois law, silence can only be fraudulent if a party is under a duty to disclose information, and "silence in a business transaction is not enough to constitute fraud"); *Pearson's Pharmacy, Inc. v. Express Scripts, Inc.*, 505 F.Supp.2d 1272, 1279 (M.D. Ala. 2007) (dismissing cause of action in a case on all fours with the present case in the absence of a duty to speak).  In light of Mill Street's failure to rebut or otherwise dispute that a duty to disclose is the *sine qua non* of a fraudulent concealment claim, the Court must dismiss Count II.

Third, when revealed for what they are, Mill Street's allegations in Count II are contract-based claims impermissibly masquerading as fraud-based claims.  *See Siegel v. J & H Marsh & McLennon, Inc.*, 159 F. Supp. 2d 1118, 1127 n.2 (N.D. Ill. 2001) (finding where allegedly misleading statements were made in the parties' agreement, the proper claim was for breach of contract as opposed to fraud).  Mill Street falls back on the argument that it is entitled to plead alternative theories of recovery pursuant to Rule 8(d)(2).  Again, though, Mill Street fails to address any of the authority cited by the Caremark Defendants in their Motion.  For example, the Court in the *Siegel* case dismissed a very similar "promissory fraud" type claim on the grounds that it was improperly seeking to recast a breach of contract claim as one for fraud.  *Id.* Similarly, the mere labeling or naming of a claim will not save it from otherwise proper dismissal.  *See United Gen. Title Ins. Co. v. AmeriTitle, Inc.*, 365 Ill. App. 3d 142, 149 (1st Dist. 2006) (recognizing that courts look beyond the label of a cause of action and "evaluate a complaint to determine the true character of a plaintiff's cause of action").  For these reasons as well, Count II of the Amended Complaint should be dismissed.

Fourth, regardless of any of the foregoing deficiencies in Mill Street's fraud-based claims that themselves warrant dismissal, the allegations in Count II lack the requisite specificity and detail demanded by Rule 9(b).  Again, it is well-established law that, "[t]o comply with the requirements of Rule 9(b) in alleging misstatement, an allegation of fraud must specify: '(1) those statements the plaintiffs thinks were fraudulent, (2) the speaker, (3) where and when [the misstatements] were made, and (4) why plaintiff believes the statements were fraudulent.'"

10

*Siegel*, 159 F. Supp. 2d at 1125 (citing *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 468 (S.D.N.Y. 2001) (quotation omitted) (alteration in original)).

In other words, Mill Street's fraud claims are subject to dismissal if they do not contain at least the "who", "what", "where" and "when" of the purported fraud.  *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).  Even the case law cited by Mill Street makes it clear that its conclusory fraud-based claims lack any real detail and should be dismissed accordingly. For example, in *Prince-Servance v. Bankunited, FSB*, No. 07 C 1259, 2007 WL 3254432, at *6 (N.D. Ill. Nov. 1, 2007), this Court noted that, "[t]he purpose of [Rule 9(b)] 'is to force the plaintiff to do more than the usual investigation before filing his complaint."  The Court continued:

> Here, **plaintiff states with specificity the content of the alleged misstatements and who made them**.  Furthermore, by **giving certain dates she lays out a general time-frame**, putting defendants on notice of the date of their alleged misconduct.  We find that **since plaintiff has plead with great specificity the who and what of her fraud claim, along with more general allegations as to time and method of those communications, she has sufficiently put the defendants on fair notice of the alleged conduct complained of**, and thus has complied with the requirements of Rule 9(b).

*Id*. (emphasis added)  By contrast, Mill Street's fraud claims here are completely devoid of any such detail.  In *Seville Industrial Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786 (3d Cir. 1984), the Third Circuit Court of Appeals stated that Rule 9(b) requires a plaintiff to plead with particularity the "circumstances" of the alleged fraud to put the defendants on notice of "the precise misconduct" at issue.  *Id*. at 791.  It went on to note that, while plaintiffs need not strictly adhere to a formulaic format, they must follow the functional equivalent.  As such, "[p]laintiffs are free to use alternative means of **injecting precision** and **some measure of substantiation** into their allegations of fraud.  *Id*. (emphasis added)  In ultimately finding Rule 9(b) was satisfied in that case, the *Seville* Court stated that the exhibits and factual allegations contained "great specificity" in connection with the alleged fraud.  *Id*.

11

Here, however, instead of precision, details, substantive factual allegations or anything similar that might put the Caremark Defendants on notice of the details of their alleged wrongdoing, Mill Street has simply set forth conclusory legal allegations that do not suffice under the circumstances – for example, repeatedly stating that Caremark L.L.C.'s conduct was "fraudulent." (*See* Am. Cmplt., ¶¶ 1, 12, 30, 33-34)  Legal conclusions do not survive the rigor of Rule 9(b).  *See Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991) ("They may not avoid dismissal, however, simply by attaching bare legal conclusions to narrated facts which fail to outline the bases of their claims.") (citations omitted).  For all of the above reasons, this Court should dismiss Mill Street's fraud-based claims.

### D.   *Mill Street Is Not A Consumer, Nor Has A "Consumer Nexus" Been Established, And The Consumer Fraud Act Claim Must Therefore Be Dismissed*

In arguing that Mill Street properly alleges a cause of action under the Consumer Fraud Act, Mill Street again does not address the case law rejecting its position.  If the Court were to accept Mill Street's strained argument that it is a consumer of Caremark L.L.C.'s services such that it has a claim under the Consumer Fraud Act, then every commercial transaction between two businesses would fall within the ambit of the Consumer Fraud Act, a result clearly and repeatedly rejected by Illinois courts.  *See, e.g., Lake County Grading Co. of Libertyville, Inc. v. Advance Mech. Contractors, Inc.*, 654 N.E.2d 1109, 1115-16 (Ill. App. Ct. 1995) (refusing to apply the Consumer Fraud Act because it was "not intended to cover all commercial transactions regardless of the relationship between the parties involved").

Moreover, Mill Street's argument that it falls within the statutory definition of "consumer" because it "consume[s] . . . Defendants' large volume of insureds, members or clients" (Resp., p. 15), is ludicrous.  As plainly set forth in the Complaint, as well as in the contract attached to the Complaint, Mill Street contracted to sell pharmaceuticals to Caremark, L.L.C. at contractually agreed upon rates, plain and simple.  Under well-established law, such a relationship is a business one, and Mill Street is plainly not a "consumer" as defined under the Act.  *See* 815 ILCS 505/1(e).

Furthermore, and as previously set forth in Defendants' Opening Memorandum, Mill Street is unable to establish any "consumer nexus" as required for claims brought under the Consumer Fraud Act.  *See Pressalite Corp. v. Matsushita Elec. Corp. of Am.*, No. 02 C 7086, 2003 WL 1811530, at *10 (N.D. Ill. Apr. 4, 2003) (finding no consumer nexus or consumer

12

protection concerns where plaintiff allegedly was defrauded within its particular business relationship with the defendant). Although Mill Street vaguely states in its Response that its allegations "implicate consumer protection concerns", (Resp., p. 16), it fails to identify a single one. It is well-established that such conclusory claims are insufficient to withstand a motion to dismiss and Mill Street's claim must therefore be dismissed.

Finally, for the same reasons set forth in Section II(C) above, Mill Street's Consumer Fraud Act claim – a fraud-based claim subject to the heightened pleading requirements of Rule 9(b) – falls well short of satisfying the pleading standard for fraud. For these reasons, Plaintiff's Consumer Fraud Act claim should be dismissed.

### E.    *The UDTPA Does Not Apply Under The Circumstances*

Tellingly, Mill Street does not refute any of the authority cited by the Caremark Defendants demonstrating that the UDTPA, 815 ILCS 510/2, is inapplicable to the present circumstances. As the Caremark Defendants previously set forth, and as clearly set forth in the plain language of the statute, the UDTPA was designed to prohibit actions such as misleading trade identification or false or deceptive advertising, *see*, *e.g.*, *Labor Ready, Inc. v. Williams Staffing, LLC*, 149 F. Supp. 2d 398, 413 (N.D. Ill. 2001) (discussing UDTPA in the context of disparagement of plaintiff's goods or services)), claims which have nothing to do with those at hand. Moreover, and similar to the Consumer Fraud Act, lawmakers did not intend for every breach of contract action such as this to be accompanied by a UDTPA claim. *See Lake County Grading Co*, 654 N.E.2d at 1115-16. Therefore, Mill Street's misplaced UDTPA claim must be dismissed.

### F.    *Mill Street Fails To Plead An Independent Tort Separate From Its Breach Of Contract Claim To Justify Survival Of Its Unjust Enrichment Theory*

Illinois law prohibits a plaintiff from simultaneously pursuing theories of unjust enrichment and breach of contract because the former is a quasi-contractual theory that presumes the absence of an express contract. *See*, *e.g.*, *Hartigan v. E & E Hauling, Inc.*, 153 Ill. 2d 473, 496-97. Recognizing, of course, that the Participating Pharmacy Agreement is an express contract eliminating any unjust enrichment claim, Mill Street attempts to save its unjust enrichment claim by arguing that it is based on an independent tort – fraud – separate and apart from its breach of contract claim. (Resp. at 17-18) However, for the reasons set forth above in Sections II(C)-(E), Mill Street's fraud and fraud-based claims are fatally flawed for multiple

13

reasons and must be dismissed.  Accordingly, Mill Street's unjust enrichment claim must be dismissed as a matter of law.

### G.    *Mill Street's Claims Are Time-Barred*

Mill Street erroneously claims, "[t]here is no evidence that Plaintiff's claims are barred by the applicable statutes of limitation."  (Resp. at 18)  To the contrary, one need look no further than Mill Street's Complaint to realize that Mill Street was receiving information regarding AWP on a regular basis such that it knew, or should have known, the current AWP value at all times.  (Am. Cmplt, ¶ 32)  Thus, pursuant to the discovery rule, Mill Street's causes of action were accruing at regular intervals while it remained in business.

Therefore, Mill Street's causes of action are time-barred (or time-limited) by the 10-year limitations period for breach of written contract, 5-year limitation for fraud-based and unjust enrichment claims and 3-year limitation for the Consumer Fraud Act claim as set forth in Defendants' opening Memorandum.

## CONCLUSION

For the above reasons, the Caremark Defendants respectfully request that this Court grant their motion to dismiss for improper venue or, alternatively, transfer this action to the Eastern Division.  In the further alternative, the Caremark Defendants request that this Court dismiss this action pursuant to Rules 9(b) and 12(b)(6) for failure to state a claim upon which relief can be granted, and order such other and further relief as this Court deems just and proper.

CHIC_2749534.1

**Dated:**  April 25, 2008                              Respectfully submitted,

                                                        CAREMARK RX, L.L.C., CAREMARK
                                                        L.L.C. AND CVS CAREMARK
                                                        CORPORATION


                                                        /s/___Daniel M. Cordis_____
                                                        One of Their Attorneys


Frank E. Pasquesi (IL Bar No. 6205455)
Robert H. Griffith (IL Bar No. 6237224)
Daniel M. Cordis (IL Bar No. 6285963)
**FOLEY & LARDNER LLP**
321 North Clark Street
Suite 2800
Chicago, Illinois  60610
312.832.4500 (t)
312.832.4700 (f)

CHIC_2749534.1

**PROOF OF SERVICE**

Daniel M. Cordis, an attorney, hereby certify that on April 25, 2008, I caused the foregoing **Defendants' Reply In Support Of Their Motion To Dismiss Pursuant To Rule 12(B)(3) Or, In The Alternative, To Transfer In The Interest Of Justice, Or In The Further Alternative To Dismiss Pursuant To Rules 9(B) And 12(B)(6)** to be served on the following individual via the Western Division of the Northern District of Illinois' ECF filing system:

Peter L. Currie
The Law Firm of Peter L. Currie, P.C.
536 Wing Lane
Saint Charles, IL  60174
630.862.1130 (t)
630.845.8983 (f)
plclaw05@aol.com


      /s/ Daniel M. Cordis
               Daniel M. Cordis

CHIC_2749534.1