IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| MILL STREET CLINIC PHARMACY, INC., individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | Case No. 07 C 50249 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Reinhard |
| | ) | |
| CAREMARK RX, L.L.C., CAREMARK RX, INC., CAREMARK, INC., CAREMARK, L.L.C., and CVS CAREMARK CORPORATION, | ) ) ) | <u>JURY TRIAL DEMANDED</u> |
| | ) | |
| Defendants. | ) | |

**<u>SECOND AMENDED CLASS ACTION COMPLAINT</u>**

NOW COMES Plaintiff, MILL STREET CLINIC PHARMACY, INC. (hereinafter "Mill Street" or "Plaintiff"), individually and on behalf of a class of all persons or entities throughout the United States who are similarly situated, and files this Complaint against the Defendants, Caremark Rx, L.L.C., Caremark Rx, Inc., Caremark, Inc., Caremark, L.L.C., and CVS Caremark Corporation (hereinafter collectively referred to as "Caremark" or "Defendants"). In support thereof, the Plaintiff states the following:

**<u>NATURE OF THE CASE</u>**

1.      Through a fraudulent, unlawful and unfair course of conduct, Defendants have, over the course of many years, knowingly, intentionally and willfully withheld reimbursement payments to Plaintiff and members of the putative class. Defendants leverage its large market share over Plaintiff and thousands of other pharmacies in an unlawful scheme designed to maximize its profits at the expense of pharmacies.

1

2.      Plaintiff was a retail pharmacy.  Defendants are pharmacy benefit management companies.  Between 1984 and 2002, Plaintiff entered into contractual agreements with Defendants on a renewal basis pursuant to which Plaintiff agreed to dispense prescription medications to Defendants' insureds, members or clients.  The contracts between Plaintiff and Defendants contain provisions which require Defendants to reimburse Plaintiff for filling prescription medications at a rate which is determined by using the Average Wholesale Price ("AWP") of a medication.  For years, Defendants have failed to reimburse Plaintiff and members of the putative class pursuant to the agreed upon rate as alleged herein.  Defendants' scheme is two-fold.  First, Defendants systematically reimburse pharmacies at a lower rate than required under the contracts.  Second, Defendants systematically reimburse pharmacies at a later date than required under the contract, thereby maximizing its profits on the "float" of Plaintiff's money. Defendants have employed this unlawful scheme for decades on a nationwide basis.

## JURISDICTION AND VENUE

3.      Jurisdiction over the causes of action in this class action Complaint is conferred by 28 U.S.C. § 1332(d)(a), as Plaintiff is a citizen of a different state than that of at least one Defendant and the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs.

4.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Northern District of Illinois Western Division, because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## PARTIES

5.      Mill Street Pharmacy, Inc. (hereinafter "Mill Street") was a corporation incorporated under the laws of the State of Illinois with its primary place of business in Naperville, Illinois.  Mill Street was an independent pharmacy whose primary business was the dispensing and sale of prescription drugs.  Robert H. Scurr was the president of Mill Street.

6.      Defendant Caremark Rx, L.L.C., is a Delaware limited liability corporation with its principal place of business located at 211 Commerce Street, Suite 800, Nashville, Tennessee.

7.      Defendant Caremark, L.L.C., is a California limited liability corporation with its principal place of business at 211 Commerce Street, Suite 800, Nashville, Tennessee.

8.      Defendant Caremark Rx, Inc., is a Delaware corporation with its headquarters located at 211 Commerce Street, Suite 800, Nashville, Tennessee.

9.      Defendant Caremark, Inc., is a California Corporation with its principal place of business at 211 Commerce Street, Nashville, Tennessee.

10.     Defendant CVS Caremark Corporation, is a Delaware Corporation with its principal place of business in Woonsocket, Rhode Island.

11.     Defendants are responsible for the actions or inactions of each other as alleged herein as all Defendants are parent corporations and/or predecessors and/or successors and/or alter egos of each other and each company is a responsible party under the doctrines of respondeat superior, joint and several liability, agency and/or other doctrines.

12.     Defendants acted in concert by defrauding Plaintiff and breaching its contracts with Plaintiff and the putative class through a coordinated inter-corporate relationship.  Each Defendant was and is an active participant in the misleading, unlawful, fraudulent, and unconscionable practices described herein.

3

13.    At all relevant times, each Defendant, was an agent, representative and/or employer of each other Defendant and/or is the parent, predecessor or successor of each Defendant.  In committing the acts alleged herein, the Defendants acted within the scope of their agency and/or employment and were acting with the consent, permission, authorization and knowledge of all other Defendants and perpetrated and/or conspired with and/or aided and abetted the unlawful and fraudulent acts described herein.    Defendants are hereinafter collectively referred to as "Caremark" or "Defendants."

## CLASS ALLEGATIONS

14.    Plaintiff brings this action as a nationwide class action pursuant to Federal Rules of Civil Procedure Rule 23.  The requirements of subparts 23(a) and (b)(l), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure are met.  This class is more specifically defined as follows:

> All pharmacies and/or other similar entities who entered into a contract with Caremark or its predecessor(s) at any time within ten (10) years prior to the filing of this Complaint, which contract required Caremark to reimburse the pharmacy and/or other similar entity at a rate which is a function of the Average Wholesale Price ("AWP"); but excluding (1) pharmacies who are currently in bankruptcy; (2) pharmacies and/or other similar entities whose obligations to Caremark have been modified or discharged in bankruptcy and (3) any governmental agency or entity.

15.    Excluded from the Rule 23 Class are Defendants' subsidiaries, legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the Rule 23 Class period has had, a controlling interest in Defendants; the Judge to whom this case is assigned and any member of the Judge's immediate family; and all persons who will submit a timely and otherwise proper request for exclusion from the Rule 23 Class.

16.    **Numerosity:**    The persons in the Rule 23 Class identified above are geographically diverse and so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants.

17.    **Commonality**:  There are numerous questions of law and fact common to the Rule 23 Class that predominate over any questions affecting only individual members.  The questions of law and fact common to this Rule 23 Class that predominate over any question solely affecting individual members of the Rule 23 Class, including but are not limited to:

(a)    Whether Defendants had access to the current or correct Average Wholesale Price of prescription medications;

(b)    Whether Defendants failed to make reimbursement payments using the true Average Wholesale Price of prescription medications;

(c)    Whether Defendants knowingly, intentionally and/or willfully failed to make reimbursement payments using the true Average Wholesale Price of prescription medications;

(d)    Whether Defendants failed to make timely reimbursement payments;

(e)    Whether Defendants knowingly, intentionally and/or willfully failed to make timely reimbursement payments;

(f)    Whether Defendants concealed, suppressed and/or omitted the fact that it did not intend to make reimbursement payments properly and/or timely;

(g)    Whether Defendants knowingly, intentionally and/or willfully concealed, suppressed and/or omitted the fact that it did not intend to make reimbursement payments properly and/or timely;

(h)     Whether Plaintiff and class members are entitled to injunctive relief;

(i)     Whether Plaintiff and class members are entitled to punitive damages;

(j)     Whether Plaintiff and class members are entitled to treble damages;

(k)     Whether the conduct of Defendants, as alleged in this Complaint, caused damages to the Plaintiff and the other members of the Class; and

(l)     The appropriate measure of damages sustained by Plaintiff and other members of the Class.

18.     **Typicality**:  The claims of the named Plaintiff are typical of the claims of the defined class, within the meaning of Fed. R. Civ. P. 23(a)(3), and are based on and arise out of the same unlawful business practices of the Defendants.  The proposed named Plaintiff states claims for which relief can be granted that are typical of the claims of absent class members.  If litigated individually, the claims of each class member would require proof of the same material and substantive facts, rely upon the same remedial theories, and seek the same relief.

19.     **Adequacy:**  The named Plaintiff is committed to pursuing this action and is prepared to serve the proposed class in a representative capacity with all of the obligations and duties material thereto.  The named Plaintiff will fairly and adequately represent the interests of the members of the class within the meaning of Fed. R. Civ. P. 23(a)(4), and have no interest adverse to, or which directly and irrevocably conflict with, the interests of the other class members.

20.     The named Plaintiffs have retained competent counsel experienced in class action litigation.  Said counsel will adequately prosecute this action, and will assert, protect and otherwise, will represent the named class representatives and absent class members.

21.     **Superiority:**  A class action is superior to other available methods for their fair and efficient adjudication of the controversy – particularly in the context of rate reimbursement litigation, where small pharmacies lack the financial resources to vigorously prosecute separate lawsuits in federal Court against large corporate Defendants like Caremark.

22.     Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

23.     **Rule 23(b)(1)(A) and (B):**  The prosecution of separate actions by individual class members would create a risk of adjudication with respect to individual class members which would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to this action, or could substantially impair or impede their ability to protect their interests.

24.     The prosecution of separate actions by individual members of the class would create a risk of inconsistent of varying adjudications with respect to individual members of the class which would establish incompatible rights within the plaintiff class.

25.     **Rule 23(b)(2):**  The Defendants' actions are generally applicable to the class as a whole, and Plaintiff seeks equitable remedies with respect to the class as a whole, within the meaning of Fed. R. Civ. P. 23(b)(2).

26.     **Rule 23(b)(3):**  The common questions of law and fact enumerated above predominate over individual questions, and a class action is a superior method for the fair and efficient adjudication of this controversy, within the meaning of Fed. R. Civ. P. 23(b)(3). Common or general proof will be used by each class member to establish each element of their claims.  Additionally, proceeding as a class action is superior to other available methods of

7

adjudication.  The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation since the cost of litigation may exceed what any one class member has at stake.

## FACTUAL ALLEGATIONS

27.    Plaintiff Mill Street Pharmacy was duly incorporated under the laws of the state of Illinois in 1984.  Plaintiff was dissolved on January 3, 2005.

28.    Between 1984 and 2002, Plaintiff entered into a series of contracts with Defendants whereby Plaintiff agreed to dispense prescription medications for Defendants' insureds, members or clients and Defendants agreed to reimburse Plaintiff at a rate which is a function of the Average Wholesale Price of the various prescription medications.  For example, one such contract states the reimbursement rate as:

**"Reimbursement Rate:**

**Brand AWP – 14% +$2.00**

**Generic HCFA + $2.50 if no HCFA, AWP – 14% + $2.50"**

*A true and correct copy of one of the contracts between Plaintiff and Defendants is attached hereto as Exhibit A.*

29.    Each of the contracts required Defendants to reimburse Plaintiff within a set amount of time from the date on which Plaintiff dispensed the prescription medications to Defendants' clients and/or insureds.  For example, the attached form contract required "payment shall be made at least monthly by Caremark."  *See Exhibit A, ¶ 4.*

30.    Beginning at a date unknown, Defendants began engaging in the unfair, unlawful, fraudulent, wrongful and deceptive practice of failing to fully, timely and properly reimburse

Plaintiff for filling prescriptions on behalf of its insureds, members or clients. This fraudulent conduct includes Defendants' failure to properly reimburse Plaintiff the Average Wholesale Price ("AWP") of prescription medications pursuant to the terms of the parties' contracts.

31.    The contracts between Plaintiff and Defendants provide that Defendants will reimburse Plaintiff an amount which is arrived at by using the Average Wholesale Price for filling a prescription for medication. Despite Defendants contracting with Plaintiff to reimburse Plaintiff at a rate which is a function of the AWP, Defendant failed to reimburse Plaintiff in this manner.

32.    AWP is the average of the prices reported by national drug wholesalers for a given prescription drug. AWP is electronically updated by the manufacturer or distributor of the medication on a current or correct basis. Accordingly, AWP is readily ascertainable and easily definable. AWP is reported to pharmacies, insurance companies, pharmacy benefit managers and the public by third-party publishers such as First DataBank and Medi-Span. Typically, pharmacy benefit reimbursement contracts, like the ones between Plaintiff and Defendants, require pharmacy benefit managers to reimburse pharmacies based upon a percentage tied to AWP (i.e. AWP minus 14%) plus pay the pharmacy a dispensing fee (i.e. $2.00).

33.    Despite having access to current or correct AWP information, Defendants deliberately refused to fully reimburse Plaintiff at a rate which is a function of the true AWP. Defendants intentionally and routinely reimbursed Plaintiff and the putative class at a rate lower than a function of the true AWP. Upon information and belief, Defendants engaged in this unlawful, fraudulent and deceptive business practice to maximize profits.

34.    Despite having a contractual obligation to reimburse Plaintiff and members of the putative class timely, as set forth in the contracts, Defendants intentionally and routinely failed to

9

timely reimburse Plaintiff and members of the putative class according to the terms of their contracts. Upon information and belief, Defendants engaged in this unlawful, fraudulent and deceptive business practice to maximize profits by making money off the "float."

35. Accordingly, Defendants have retained monies that belong to Plaintiff. Upon information and belief, Defendants engaged in the unlawful, fraudulent and deceptive practices alleged herein in order to maximize its profits.

36. Defendants have concealed, suppressed and/or omitted from Plaintiff the fact that Defendants do not have the intent to fully, properly or timely reimburse Plaintiff in accordance with the terms of the parties' contractual agreement.

37. Defendants' policy and practice of failing to fully, properly and timely reimburse pharmacies has dramatically increased the profits of Defendants throughout the entire United States. Defendants have defrauded countless pharmacies based upon this practice and further has breached numerous contracts.

38. Defendants carried out each of the unlawful, unfair and deceptive business practices alleged herein with knowledge, intent and/or willfulness.

39. Plaintiff has been damaged in that Plaintiff has not been reimbursed pursuant to the terms of the contractual agreements with Defendants.

## COUNT I
## **BREACH OF CONTRACT**

40. Plaintiff adopts, re-alleges and incorporates each and every allegation set forth above as though fully set forth herein.

41.     Between 1984 and 2002, numerous written contracts and/or renewal contracts were entered into between Plaintiff and Caremark Rx, Inc. and Caremark, Inc.

42.     Plaintiff fully performed its obligations under the terms of the contracts and satisfied all required conditions precedent.  Caremark Rx, Inc. and Caremark, Inc. failed to perform its obligations pursuant to the terms of the contracts.

43.     Caremark Rx, Inc. and Caremark, Inc.'s practice of failing to fully, properly and timely reimburse Plaintiff for prescription medications as set out heretofore constitutes a breach of contract for which Plaintiff has been damaged.

44.     Moreover, Caremark Rx, Inc. and Caremark, Inc.'s practice of failing to properly reimburse Plaintiff based upon current or correct AWP prices for prescription medications as set out heretofore constitutes a breach of contract for which Plaintiff has been damaged.

45.     Caremark Rx, Inc. and Caremark, Inc.'s breach of contract caused Plaintiff to lose money.  Plaintiff has suffered severe damages as a direct and proximate result of Caremark Rx, Inc. and Caremark, Inc.'s breach as alleged herein.  Plaintiff is entitled to compensatory damages in an amount equal to the contract amount minus the amount reimbursed by Caremark Rx, Inc. and Caremark, Inc., plus interest.


**COUNT II**
**UNJUST ENRICHMENT**

46.     This Count is brought in the alternative to any contract and statutory claims.

47.     By the unlawful scheme alleged herein, Defendants unjustly derived a benefit from Plaintiff and the class in the form of lower reimbursement payments to Plaintiff and the class, the use of Plaintiff's and class members money in "float" and other economic and related

benefits and commercial gain, to which Defendants had no right or entitlement.  The benefits to Defendants were conferred as a result of Defendants' deception, misconduct, misrepresentations, concealments, suppressions and/or omissions to Plaintiff and the class as alleged herein.

48.    It would be unjust to allow the Defendants to retain the said benefit, thereby enriching them, without compensating Plaintiff and the class.

49.    Accordingly, Plaintiff and the class are entitled to monetary damages, legal relief, equitable relief and/or otherwise more fully described in the Prayer for Relief.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

i.    Acceptance of jurisdiction of this cause;

ii.    Certification of this case as a class action pursuant to Rule 23 of Federal Rules of Civil Procedure;

iii.    Designation of the Plaintiff as representative of the Rule 23 Class, and counsel of record as Class Counsel;

iv.    Damages sufficient to compensate Plaintiff and the Rule 23 Class for their injuries;

v.    A preliminary and permanent injunction against the Defendants and its partners, officers, owners, agents, successors, employees, representatives and any and all persons acting in concert with it, from engaging in any further unlawful practices and policies as set forth herein;

vi.    Pre-judgment and post-judgment interest;

vii.    Reasonable attorney's fees and costs of this action;

viii.    Punitive damages and/or treble damages as allowable by law; and

ix.    Any and all other relief that this Honorable Court may deem just and equitable.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.


Dated:  <u>July 31, 2008</u>                    Respectfully submitted,


                                        /s/ Peter L. Currie
                                        Peter L. Currie, Esq. (#06281711)
                                        THE LAW FIRM OF PETER L. CURRIE, P.C.
                                        536 Wing Lane
                                        Saint Charles, Illinois 60174
                                        Telephone: (630) 862-1130
                                        Facsimile:  (630) 845-8982

                                        Robert G. Methvin, Jr. (Admitted *Pro Hac Vice*)
                                        James M. Terrell (Admitted *Pro Hac Vice*)
                                        McCALLUM, METHVIN & TERRELL, P.C.
                                        2201 Arlington Avenue South
                                        Birmingham, AL 35205
                                        Telephone:  (205) 939-0199
                                        Facsimile:  (205) 939-0399

                                        *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 31, 2008, I electronically filed the foregoing document with the clerk of court for the U. S. District Court, Northern District of Illinois, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

Frank E. Pasquesi, Esq.
Robert H. Griffith, Esq.
Daniel M. Cordis, Esq.
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, Illinois 60610


/s/ Peter L. Currie

14

# EXHIBIT A

# CAREMARK

Prescription Service Division

August 1, 1995

## Final Notice To Join *Care Select Network*

Dear Pharmacy:

Caremark is awaiting your response to join a select network of pharmacies (Care Select) to provide service to fill over 10 million prescriptions annually. Some of the companies now in this group are Sears, Allstate, Midwest Employees Benefit Coalition and Amoco to name a few. Besides the conversion of some existing groups like Sears, Allstate and Amoco, it is expected that this select network will be the primary network used by future employee groups selecting Caremark as their P.B.M. and wanting a select group of pharmacies. **If you are providing service to these members now we encourage you to participate in order to continue service. Thank you for your consideration. Please fax your response by August 16, 1995 to Caremark at (708) 634-7599.**

### Reimbursement Rate:
**Brand AWP -14% +$2.00**
**Generic HCFA +$2.50 if no HCFA, AWP -14% + $2.50**

If you have questions please phone Caremark Provider Relations at (708) 634-7580.

Regards,

Caremark Prescription Service Division

Return to:
Caremark Prescription Service Division, Provider Relations
(708) 634-7580
111 Barclay Blvd. Suite 120
Lincolnshire, IL  60069

faxed to 5/25/95
634-7914

# CRK
### CAREMARK INC.

CHECK HERE ☐ if in the past year there has been a change in Pharmacy's name, address (including zip code), phone number (including area code) or NABP number.

## PARTICIPATING PHARMACY AGREEMENT

THIS PARTICIPATING PHARMACY AGREEMENT ("Agreement"), dated as of _____ ("Effective Date"), is between Caremark Inc., ("Caremark"), having its address at 2211 Sanders Road, Northbrook, IL 60062 Attention: Retail Network Management Fax: 847/559-3646 and the pharmacy whose name and address is set forth below ("Pharmacy"):

Pharmacy "DBA" Name: _____

Location Address: _____

City: _____ State: _____ Zip: _____ - _____

Phone: ( ____ ) _____ - _____ Fax: ( ____ ) _____ - _____

Mailing Address: _____

City _____ State: _____ Zip: _____ - _____

Contact Person: _____ Phone: ( ____ ) _____

NABP# _____ Federal Tax I.D.#: _____
(Attach list if multiple NABP#s.)

Type of Pharmacy Practice:   ☐ retail  ☐ mail service  ☐ long term care  ☐ hospital  ☐ clinic   ☐ other   _____

Type of Ownership: ☐ independent  ☐ chain

The parties agree as follows:

1.  **Responsibilities of Pharmacy.** Pharmacy shall dispense prescriptions to members covered under prescription benefits plans ("Plans") administered by various plan sponsors or their administrators ("Payors"). Such prescriptions shall be dispensed in accordance with the information communicated by Caremark to Pharmacy, applicable state and federal law, and applicable pharmacy practice standards, including all counseling and DUR requirements. Pharmacy shall at all times maintain all applicable licenses and permits, and shall provide evidence of the same to Caremark at Caremark's request. Pharmacy shall comply with accreditation standards as reasonably required by Caremark or Payors. Pharmacy agrees to always collect the applicable copayment as adjudicated by Caremark and to never discount or waive such copayment or to collect a greater amount. Pharmacy agrees to provide services to covered members of Plans with a degree of care, skill and attention at least as high as that provided to the general public. Should Pharmacy require the use of an intermediary, such as Envoy, GCC or NDC, to transmit to Caremark, Pharmacy shall be responsible for any applicable fees. Pharmacy shall adjudicate prescriptions through Caremark utilizing NCPDP software version 3.2 or higher. Pharmacy is responsible for maintaining all hardware and software necessary to support the prevailing pharmacy practice standards. Pharmacy shall require the signature of the patient or patient's representative on a permanent record before dispensing any prescription.

2.  **Review of Records.** Pharmacy shall maintain all prescription records as required by applicable state and federal law. During business hours and upon reasonable notice, Pharmacy shall provide Caremark with access to review and copy all prescription records, patient medication profiles, billing records and signature records relating to services provided pursuant to this Agreement, as well as insurance, licensure and accreditation records and other business records as reasonably required to confirm compliance with Pharmacy's obligations under this Agreement. The terms of this Section shall survive the termination of this Agreement for any reason.

3.  **Eligibility and Coverage.** Claim adjudication, drug utilization review and other edits shall be performed through electronic linkage to Caremark. Pharmacy shall access such electronic linkage with Caremark for each prescription dispensed. Verification of eligibility, drug coverage and other applicable edits to Pharmacy via the electronic linkage constitutes authorization for Pharmacy to service the Plan member. Caremark is not responsible for transmission errors of any kind. The terms of this Section shall survive the termination of this Agreement for any reason.

4.  **Payment.** Pharmacy is entitled to reimbursement for each prescription dispensed to a Plan member at the lower of: (a) the amount applicable to a given Plan or (b) Pharmacy's usual and customary price (i.e., Pharmacy's cash price to the general public at the time of dispensing inclusive of all coupons, discounts, and other deductions), provided that Pharmacy has verified the requisite eligibility and coverage authorization and that Pharmacy has complied with all other applicable Plan

than thirty (30) days after the date of service. Pharmacy agrees to pay an administrative transactional fee of $.10 per transmission to Caremark. Any dispute as to payment must be brought to Caremark's attention within sixty (60) days after Pharmacy receives the disputed payment from Caremark. Any such dispute shall be governed by Caremark's grievance policy as then in effect. Payment shall be made at least monthly by Caremark. In the event that the prescription is not picked up within two (2) weeks of transmission, Pharmacy shall make a claim to reverse the prescription and if payment has been made to Pharmacy, Caremark shall be entitled to reimbursement. Caremark may offset any amounts owing to Caremark against amounts to be paid to Pharmacy. The terms of this Section shall survive the termination of this Agreement for any reason.

5.  **Indemnification/Insurance.** Each party shall indemnify and hold harmless the other party, its directors, officers, employees and agents against all claims, liabilities, losses, damages, costs or expenses of any kind which arise as a result of the negligence or misconduct of the indemnifying party in performing any services under this Agreement. Each party shall maintain professional liability and general liability insurance in adequate amounts to cover their risks under this Agreement, but not less than $1,000,000 in professional liability coverage. Each party shall provide a current certificate of coverage to the other party upon request. The terms of this Section shall survive the termination of this Agreement for any reason.

6.  **Term and Termination.** The initial term of this Agreement shall be twelve (12) months from the Effective Date. Thereafter, the term shall be automatically renewed annually for successive additional twelve (12) month periods, subject to the right of either party to terminate this Agreement upon at least 90 days prior written notice; provided, however that Caremark shall also have the ability to terminate this Agreement effective upon receipt of notice by Pharmacy, for breach of this Agreement or for other good cause.

7.  **Advertising and Promotion.** Pharmacy agrees that it shall display any signage provided by Caremark. Pharmacy may advertise that it is a member of Caremark's network of retail pharmacies. Pharmacy shall cease any and all such usage immediately upon termination of this Agreement.

8.  **Miscellaneous Provisions.**

A.  This Agreement supersedes all prior or contemporaneous understandings or contracts, and constitutes the entire agreement existing between the parties regarding the subject matter of this Agreement. No waiver or discharge of any breach of this Agreement shall be effective unless it is in writing signed by the other party. Any waiver of any breach of any provision of this Agreement shall not be a waiver of any subsequent breach of any provision of this Agreement. This Agreement may not be modified except in writing signed by both parties.

B.  Neither party shall be liable for failure or delay of performance arising from an act of God or other events beyond control of a party, such as an act of a regulatory agency, fire, flood, explosion, strike, labor stoppage, computer malfunction or act of war or rebellion.

C.  Each party shall comply with the provisions of all applicable federal, state and local laws and regulations in connection with the subject matter of this Agreement. Neither party shall make payments or perform any services under this Agreement that would be prohibited by law. No part of this Agreement shall be construed to induce or encourage the referral of patients, and no payment made pursuant to this Agreement or any other agreement between Caremark and Pharmacy shall be construed to induce the purchase, lease, order or arrangement for the furnishing of healthcare products or services.

D.  All notices provided for in this Agreement shall be in writing and shall be sent by registered or certified mail or by overnight courier addressed to the other party at the address listed above.

E.  This Agreement and its interpretation shall be governed by the internal laws of the State of Illinois (without regard to its conflict of laws rules).

IN WITNESS WHEREOF, authorized representatives of the parties have signed this Agreement.

**CAREMARK INC.**

By: _Grace Rodes_  
(Authorized Signature)

(Name of Pharmacy)

By: _____  
(Authorized Signature)

Title: VP - Retail Network Management

Title: _____

Date: December 6, 1996

Date: _____

**Please sign both copies and return one to Caremark.** If multiple stores, please attach additional listing with information for all categories listed in the first paragraph of this Agreement.